IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32150-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JESUS JOSE RUIZ-MARTINEZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Jesus Jose Ruiz-Martinez assigns two errors to the trial court's

sentence upon his convictions for first degree domestic violence assault and first degree

assault. Ruiz-Martinez contends that the trial court mistakenly imposed $160 in

discretionary legal financial obligations without inquiring on the record whether he

possessed the present or future ability to pay. He also challenges the constitutionality of

RCW 43.43.7541, which directs trial courts to impose a $100 deoxyribonucleic acid

(DNA) collection fee on all individuals convicted of a felony. We decline to address

Ruiz-Martinez's constitutional challenge to the DNA fee because of the lack of a record

as to his financial condition. We agree with Ruiz-Martinez's first assignment of error

and remand for resentencing.

## PROCEDURE

The facts underlying the charges against Jesus Jose Ruiz-Martinez bear no relevance to the issues on appeal. Ruiz-Martinez's aunt paid for a private attorney to represent him at trial. A jury found Ruiz-Martinez guilty of one count of first degree domestic violence assault and one count of first degree assault.

The trial court sentenced Jesus Ruiz-Martinez to ninety-three months' confinement for each conviction with the sentences to be served consecutively. At the close of the sentencing hearing, the trial court imposed $916.00 in legal financial obligations, reserving restitution. The legal financial obligation includes $160.00 in discretionary obligations and a $100.00 mandatory DNA collection fee. The trial court did not address Ruiz-Martinez's capability to pay financial obligations before assessing the obligations. Ruiz-Martinez did not object to the entry of any of the obligations. The trial court entered boilerplate findings that Ruiz-Martinez held the ability or likely future ability to pay the legal financial obligations. Upon appealing his sentence to this court, the trial court found Ruiz-Martinez indigent and entitled to appellate counsel at public expense.

## LAW AND ANALYSIS

### Legal Financial Obligations

Jesus Jose Ruiz-Martinez contends that the trial court erroneously ordered him to pay $160 in discretionary legal financial obligations without inquiring whether he

2

possessed the current or future ability to pay them. Generally this court does not review assignments of error to trial court rulings, about which the party did not object below. RAP 2.5(a). Thus, we must decide whether to examine Ruiz-Martinez's first assignment of error. Before addressing this predicate question, we review the law concerning legal financial obligations.

Upon a conviction in superior court, the court may order the defendant to pay restitution, costs, fines, and other assessments labeled as legal financial obligations. RCW 9.94A.760(1). The financial obligations may include restitution to the crime victims, the cost of incarceration, the cost of medical care during incarceration, a crime penalty or victim assessment fee, a crime laboratory fee, the State's criminal case filing fee, a DNA collection fee, a domestic violence assessment, the cost of a public defender, and a sheriff's service fee, among other costs. RCW 7.68.035; RCW 9.94A.760(2); RCW 10.01.160; RCW 10.99.080; RCW 36.18.020(2)(h); RCW 43.43.7541. From the date of judgment, legal financial obligations bear interest at a rate of twelve percent per annum. RCW 10.82.090, RCW 4.56.110(4), RCW 19.52.020(1).

On the order imposing legal financial obligations, the trial court should impose a monthly payment required to retire the financial obligations, with payments being applied first to restitution. RCW 9.94A.760(1). The requirement that the offender pay a monthly sum toward a legal financial obligation constitutes a condition or requirement of a sentence, and the offender faces penalties for noncompliance. RCW 9.94A.760(10). To

3

assist in collecting the financial obligations, the trial court may order a payroll deduction from the defendant's wages. RCW 9.94A.760(3). The judgment for financial obligations may also be enforced as a civil judgment. RCW 9.94A.760(4). The State may add collection fees to the sum of the financial obligations. RCW 9.94A.760(12). For an offense committed on or after July 1, 2000, the trial court retains jurisdiction over the offender, for purposes of the offender's compliance with payment of the legal financial obligations, until the defendant completely satisfies the obligations, regardless of the statutory maximum for the crime. RCW 9.94A.760(4).

A defendant, who is not in contumacious default in the payment of financial obligations, may petition the sentencing court for remission of any unpaid portion of the costs. RCW 10.01.160(4). The defendant must show manifest hardship to gain remission. RCW 10.01.160(4).

The law distinguishes between discretionary and mandatory legal financial obligations. RCW 7.68.035, RCW 36.18.020(2)(h), and RCW 43.43.7541 respectively mandate that the court impose a victim assessment fee, a criminal case filing fee, and the DNA collection fee regardless of the defendant's ability to pay. Trial courts must impose such fees regardless of a defendant's indigency. *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013). Other legal financial obligations imposed by the trial court, besides restitution, are discretionary. By statute, the court is not authorized to order a defendant to pay discretionary fees unless the defendant possesses or will possess the financial

4

ability to pay. RCW 10.01.160(3) reads:

> The court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

Jesus Jose Ruiz-Martinez's trial court imposed $100 on him for a domestic violence assessment fee and $60 for a sheriff's service fee. Both fees are discretionary. All other fees imposed were mandatory.

In recent years, the imposition of legal financial obligations by the trial court on a criminal conviction has gained extensive press coverage, criticism by civil rights groups, critiques by legal commentators, challenges by appellants, and differing rulings by divisions of the Washington Court of Appeals. Many trial courts formerly routinely imposed discretionary financial obligations no matter the financial status of the defendant because RCW 10.01.160(3) encouraged imposition "unless the defendant is or will be able to pay them." The statutory language implies that the trial court should consider the future ability of the defendant to pay, and no court can predict the future. Many appellants raised the assignment of error without having complained about the imposition of obligations by the trial court.

When the defendant failed to object before the trial court, this court formerly refused to entertain the assignment of error on appeal for various reasons. The defendant purportedly omitted an objection with the hope that the trial court would consider him or

her financially responsible and a productive member of society. The issue was not allegedly ripe for review until the State began collection efforts. An indigent defendant held the option to seek remission from the trial court.

In *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015), the Evergreen State Supreme Court consolidated two challenges to the imposition of legal financial obligations. The Supreme Court addressed two discrete and imperative issues: (1) what steps must a trial court take before imposing discretionary legal financial obligations, and (2) should the state Court of Appeals review a challenge to imposition of financial obligations when the appellant failed to object to the assessment of obligations by the trial court.

In *State v. Blazina*, our Supreme Court clarified that RCW 10.01.160(3) requires that the trial court "do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry." 182 Wn.2d at 838. Rather, the "record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay." *Blazina*, 182 Wn.2d at 838. This inquiry includes evaluating a defendant's financial resources, incarceration, and other debts, including restitution. The court noted that by statute, the trial court "shall not" order a defendant to pay costs unless the defendant is or will be able to pay them. Use of the word "shall" created an imperative for the trial court to follow.

The *Blazina* court observed ills associated with legal financial obligations imposed

6

against indigent defendants. The harms include increased difficulty in reentering society, the doubtful recoupment of money by the government, and inequities in administration. Problematic consequences of automatic imposition of legal financial obligations entail accrual of interest at a rate of twelve percent and accumulation of collection fees when a defendant fails to timely pay obligations. The Washington State Minority & Justice Commission reported in 2008 that a person who pays $25 per month toward his or her legal financial obligations will typically owe the state more ten years after conviction than when the trial court assessed the obligations. WASHINGTON STATE MINORITY & JUSTICE COMM'N, THE ASSESSMENT AND CONSEQUENCES OF LEGAL FINANCIAL OBLIGATIONS IN WASHINGTON STATE (2008). The trial court's lengthy involvement in collecting obligations inhibits reentry of the offender to society regardless of whether the State actively seeks to collect the judgment. Legal or background checks will show an active criminal record in superior court for individuals who have not fully paid their financial obligations. The active record impairs the defendant's access to employment, housing, and credit. Reentry obstacles increase the chances of recidivism.

Before addressing the trial court's obligation to verify the offender's capability to pay financial obligations, the Supreme Court, in *State v. Blazina*, analyzed whether the Court of Appeals should accept review of the imposition of financial obligations when the defendant failed to object before the trial court. RAP 2.5(a) provides, in relevant part: "The appellate court may refuse to review any claim of error which was not raised in the

7

trial court." Our high court clarified that a defendant, who makes no objection to the imposition of discretionary legal financial obligations at sentencing, is not automatically entitled to review. The court then summarily declared:

> RAP 2.5(a) grants appellate courts discretion to accept review of claimed errors not appealed as a matter of right. Each appellate court must make its own decision to accept discretionary review.

*State v. Blazina*, 182 Wn.2d at 834-35 (footnote omitted) (citation omitted). The Supreme Court identified no factors for the Court of Appeals to ponder when exercising its discretion. Presumably this court holds unfettered discretion as long as it does not base a decision on unconstitutional grounds such as the race, religion, or gender of the appellant.

Since the Washington Supreme Court's *Blazina* opinion, the respective divisions of this court and panels within each division have disagreed as to the circumstances under which the court will accept review of legal financial obligation challenges not raised below. Some panels decline review under any circumstances. Other panels permit review depending on the sum of legal financial obligations awarded. The panel randomly assigned to an appellant's case determines the outcome of his or her challenge.

Jesus Jose Ruiz-Martinez's trial court imposed $160 in discretionary legal financial obligations, a small sum compared to most awards. One may question the economics of reviewing and remanding the case to the trial court with such a small award. Nevertheless, this panel, with one dissenter, recognizes the impediments an

8

offender faces upon release from incarceration. A judgment for legal financial obligations is only one of many obstacles, but still a looming hindrance. Since the judgment appears of record, the judgment impacts the ability to obtain employment, credit, and housing regardless of the sum of the judgment. An imperative goal of law and society should be facilitating a fresh start for the offender on release from prison and the lessening of recidivism. Both the defendant and society benefit when the defendant gains employment and housing and returns to a productive life. We note that, regardless of imposition of discretionary legal financial obligations, the offender will likely face a judgment for mandatory obligations. This observation does not compel increasing the judgment amount with discretionary obligations. Admittedly an offender deserves to pay for the State's cost of his or her prosecution, but the practical consequences of imposing these costs on one struggling to pay outweighs the value of reimbursement to the State. For these reasons, we remand to the trial court to review whether Jesus Jose Ruiz-Martinez possesses or will possess the financial ability to pay discretionary legal financial obligations.

Constitutionality of DNA Collection Fee

Jesus Jose Ruiz-Martinez contends, for the first time on appeal, that the imposition of the mandatory DNA collection fee without inquiry into his ability to pay violates substantive due process principles. RCW 43.43.754 demands a biological sample, for purposes of DNA identification analysis, from an adult convicted of a felony. In turn,

RCW 43.43.7541 imposes a $100 mandatory fee on the adult convicted of a felony to defray the cost of the collection of the sample. The latter statute reads, in relevant part:

> Every sentence imposed for a crime specified in RCW 43.43.754 must include a fee of one hundred dollars. The fee is a court-ordered legal financial obligation as defined in RCW 9.94A.030 and other applicable law. For a sentence imposed under chapter 9.94A RCW, the fee is payable by the offender after payment of all other legal financial obligations included in the sentence has been completed. For all other sentences, the fee is payable by the offender in the same manner as other assessments imposed.

This court recently addressed whether it should entertain a constitutional challenge to the payment of the DNA collection fee when the defendant failed to raise the challenge before the trial court. In *State v. Stoddard*, No. 32756-6-III, 2016 WL 275318 (Wash. Ct. App. Jan. 12, 2016), we held that we would not review the challenge if the record does not show the financial condition of the appellant. RAP 2.5(a)(3) allows an appellant to raise for the first time "manifest error affecting a constitutional right." Nevertheless, in order for an issue to be "manifest" under RAP 2.5, the facts necessary to adjudicate the claimed error must be in the record on appeal. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995); *State v. Riley*, 121 Wn.2d 22, 31, 846 P.2d 1365 (1993). We also note that this court does not address the constitutionality of a recoupment order before collection action or imposition of a penalty before nonpayment. *State v. Blank*, 131 Wn.2d 230, 242, 930 P.2d 1213 (1997).

Jesus Jose Ruiz-Martinez's appeal echoes Gary Stoddard's challenge. Like Stoddard, Ruiz-Martinez's contentions assume his poverty. The record, however,

10

contains no information that he cannot afford to pay the $100 DNA collection fee. The trial court ruled Ruiz-Martinez to be indigent for purposes of hiring appellate counsel. Nevertheless, the cost of a criminal charge's defense exponentially exceeds $100. Therefore, one may be able to afford payment of $100, but not afford defense counsel. We decline review of Ruiz-Martinez's challenge to the DNA collection fee.

One may question why this court accepts discretionary review of Jesus Jose Ruiz-Martinez's appeal of his discretionary legal financial obligations, but not his challenge to the constitutionality of the DNA fee. The difference between the two issues lies in the burden of proof. RCW 10.01.160(3) imposes no burden on the offender to show impecuniousness in order to avoid discretionary legal financial obligations, but imposes a duty on the trial court to inquire of the financial condition of the defendant before imposing the obligations. Ruiz-Martinez holds the burden of showing poverty for purposes of challenging the DNA fee.

## CONCLUSION

We uphold the trial court's imposition of the mandatory $100 DNA collection fee. We otherwise remand to the trial court to determine if Jesus Jose Ruiz-Martinez has the financial ability to pay the $100 domestic violence assessment fee and the $60 for the sheriff's service fee.

11

No. 32150-9-III
*State v. Ruiz-Martinez*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, A.C.J.

I CONCUR:

_____
Pennell, J.

12

32150-9-III

KORSMO, J. (dissenting in part) — While I agree with the majority's resolution of the DNA collection fee issue, I disagree with the decision to put the county to the expense of conducting another sentencing hearing for a $160 discretionary legal financial obligation (LFO) that Mr. Ruiz-Martinez did not challenge at his initial sentencing. For the reasons well stated by Chief Judge Siddoway in her concurring opinion in *State v. Munoz-Rivera*, 190 Wn. App. 870, 361 P.3d 182 (2015), and in her opinion for this court in *State v. Duncan*, 180 Wn. App. 245, 327 P.3d 699 (2014), *review granted*, 183 Wn.2d 1013 (2015), I would affirm. I also note that the majority's rationale for declining to review the DNA issue also is equally applicable to the LFO issue. Finally, there is no need to reach this statutory claim in light of the fact that the same statute permits Mr. Ruiz-Martinez to petition for remission of his LFOs at any time. RCW 10.01.160(4). For all of these reasons, we should not be sending this case back.

While the previous paragraph contains all I need typically say about this issue, the majority's extended discussion of the well-documented problems LFOs cause for an offender's reintegration into society prompts a few additional remarks. For at least two reasons the majority's well-meaning discussion is misplaced. The first reason the discussion is misplaced is because it is only directed at the margins of the problem.

Discretionary LFOs, the only item before us, rank last in the collection priority set forth by our statutory scheme behind restitution. *See* RCW 9.94A.760(1). Even if the bottom rung of the ladder costs that we are dealing with in these cases go away the offender still faces the typically much higher costs set for restitution and mandatory court costs (now set at $800 in every case) over which trial judges have no discretionary authority.

The second reason that the discussion is misplaced is that it is directed to the wrong audience. Washington courts have no discretion in criminal sentencing other than what is accorded by the legislature.[1] If the legislature ultimately is convinced that mandatory restitution and mandatory court costs do more harm than good, it undoubtedly will change its views on these matters. However, restitution has long been considered a rehabilitative tool rather than a punitive one.[2] In accordance with that view the

---

[1] "This argument fails to recognize that the trial court does not have absolute discretion to do whatever it pleases. The trial court's discretion in sentencing is that which is given by the Legislature." *State v. Ammons*, 105 Wn.2d 175, 181, 713 P.2d 719, 718 P.2d 796 (1986) (rejecting argument that SRA violates judicial authority). That principle extends to the early days of our statehood: "The spirit of the law is in keeping with the acknowledged power of the legislature to provide a minimum and maximum term within which the trial court may exercise its discretion in fixing sentence, taking into consideration, as it should always, the character of the person as well as the probability of reformation; or the legislature may take away all discretion and fix a penalty absolute, as it does in many instances." *State v. Le Pitre*, 54 Wash. 166, 169, 103 P. 27 (1909).

[2] "Restitution, as a condition of probation, is primarily a rehabilitative tool. . . . Though partial compensation may be a concomitant result of restitution, it is not the primary purpose of such an order." *State v. Barr*, 99 Wn.2d 75, 79, 658 P.2d 1247 (1983).

2

No. 32150-9-III
*State v. Ruiz-Martinez*

legislature is quite free to conclude, as it has, that proper reintegration into society should include at least some efforts to make financial amends to the victim. That deliberative body is also quite free to reason along the same lines with respect to some of the costs that a criminal offense imposes on society and expect the offender to make good efforts at paying back some of those costs. If we do not agree with the consequences of legislative policy, the best way to address the problem is to ask that body to change its policy through additional legislation.

However, we are not addressing a legislative proposal. We are addressing a statutory claim that is subject to redress under the very statute the trial judge is accused of ignoring. As there is no need for us to intervene in this matter, I would not exercise our discretion to remand the issue. Accordingly, I respectfully dissent from the LFO portion of the majority's opinion.

Korsmo, J.

3