# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE MAR 1 2 2015

CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on March 12, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 89028-5 |
| | ) | (consol. w/No. 89109-5) |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NICHOLAS PETER BLAZINA, | ) | |
| | ) | |
| Petitioner. | ) | En Banc |
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MAURICIO TERRENCE PAIGE-COLTER, | ) | Filed    MAR 1 2 2015 |
| | ) | |
| Petitioner. | ) | |

MADSEN, C.J.—At sentencing, judges ordered Nicholas Blazina and Mauricio Paige-Colter to pay discretionary legal financial obligations (LFOs) under RCW 10.01.160(3). The records do not show that the trial judges considered either defendant's ability to pay before imposing the LFOs. Neither defendant objected at the time. For the first time on appeal, however, both argued that a trial judge must make an individualized

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 89028-5 (consol. w/No. 89109-5)

inquiry into a defendant's ability to pay and that the judges' failure to make this inquiry warranted resentencing. Citing RAP 2.5, the Court of Appeals declined to reach the issue because the defendants failed to object at sentencing and thus failed to preserve the issue for appeal.

Although a defendant has the obligation to properly preserve a claim of error, an appellate court may use its discretion to reach unpreserved claims of error consistent with RAP 2.5. In this case, we hold that the Court of Appeals did not err in declining to reach the merits. However, exercising our own RAP 2.5 discretion, we reach the merits and hold that a trial court has a statutory obligation to make an individualized inquiry into a defendant's current and future ability to pay before the court imposes LFOs. Because the trial judges failed to make this inquiry, we remand to the trial courts for new sentence hearings.

FACTS

A. *State v. Blazina*

A jury convicted Blazina of one count of second degree assault, and the trial court sentenced him to 20 months in prison. The State also recommended that the court impose a $500 victim penalty assessment, $200 filing fee, $100 DNA (deoxyribonucleic acid) sample fee, $400 for the Pierce County Department of Assigned Counsel, and $2,087.87 in extradition costs. Blazina did not object, and the trial court accepted the State's recommendation. The trial court, however, did not examine Blazina's ability to pay the discretionary fees on the record. Instead, Blazina's judgment and sentence included the following boilerplate language:

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

> 2.5 ABILITY TO PAY LEGAL FINANCIAL OBLIGATIONS The court
> has considered the total amount owing, the defend[ant]'s past, present
> and future ability to pay legal financial obligations, including the
> defendant's financial resources and the likelihood that the defendant's
> status will change. The court finds that the defendant has the ability or
> likely future ability to pay the legal financial obligations imposed
> herein. RCW 9.94A.753

Clerk's Papers at 29.

Blazina appealed and argued that the trial court erred when it found him able to pay his LFOs. The Court of Appeals declined to consider this claim because Blazina "did not object at his sentencing hearing to the finding of his current or likely future ability to pay these obligations." *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492 (2013). We granted review. *State v. Blazina*, 178 Wn. App. 1010, 311 P.3d 27 (2013).

B. *State v. Paige-Colter*

The State charged Paige-Colter with one count of first degree assault and one count of first degree unlawful possession of a firearm. A jury convicted Paige-Colter as charged. The trial court imposed the State's recommended 360-month sentence of confinement. The State also recommended that the court "impose . . . standard legal financial obligations, $500 crime victim penalty assessment, $200 filing fee, $100 fee for the DNA sample, $1,500 Department of Assigned Counsel recoupment . . . [, and] restitution by later order." Paige-Colter Verbatim Report of Proceedings (Paige-Colter VRP) (Dec. 9, 2011) at 6. Paige-Colter made no objection. The trial court accepted the State's recommendation without examining Paige-Colter's ability to pay these fees on the record. Paige-Colter's judgment and sentence included boilerplate language stating the court considered his ability to pay the imposed legal fees.

3

No. 89028-5 (consol. w/No. 89109-5)

Paige-Colter appealed and argued that the trial court erred when it imposed discretionary LFOs without first making an individualized inquiry into his ability to pay. The Court of Appeals concluded that Paige-Colter waived these claims by not objecting below. *State v. Paige-Colter*, noted at 175 Wn. App. 1010, 2013 WL 2444604, at *1. We granted review on this issue and consolidated the case with *Blazina. State v. Paige-Colter*, 178 Wn.2d 1018, 312 P.3d 650 (2013).

## ANALYSIS

A defendant who makes no objection to the imposition of discretionary LFOs at sentencing is not automatically entitled to review.[1] It is well settled that an "appellate court may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). This rule exists to give the trial court an opportunity to correct the error and to give the opposing party an opportunity to respond. *State v. Davis*, 175 Wn.2d 287, 344, 290 P.3d 43 (2012), *cert. denied*, ___ U.S. ___, 134 S. Ct. 62, 187 L. Ed. 2d 51 (2013). The text of RAP 2.5(a) clearly delineates three exceptions that allow an appeal as a matter of right. *See* RAP 2.5(a).[2]

Blazina and Paige-Colter do not argue that one of the RAP 2.5(a) exceptions applies. Instead, they cite *State v. Ford*, 137 Wn.2d 472, 477-78, 973 P.2d 452 (1999)

---

[1] The State argues that the issue is not ripe for review because the proper time to challenge the imposition of an LFO arises when the State seeks to collect. Suppl. Br. of Resp't (Blazina) at 5-6. We disagree. "'Three requirements compose a claim fit for judicial determination: if the issues are primarily legal, do not require further factual development, and the challenged action is final.'" *State v. Bahl*, 164 Wn.2d 739, 751, 193 P.3d 678 (2008) (quoting *First United Methodist Church v. Hr'g Exam'r*, 129 Wn.2d 238, 255-56, 916 P.2d 374 (1996)). A challenge to the trial court's entry of an LFO order under RCW 10.01.160(3) satisfies all three conditions.

[2] By rule, "a party may raise the following claimed errors for the first time in the appellate court: (1) lack of trial court jurisdiction, (2) failure to establish facts upon which relief can be granted, and (3) manifest error affecting a constitutional right." RAP 2.5(a).

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

and argue that "it is well established that illegal or erroneous sentences may be challenged for the first time on appeal," suggesting that they may challenge unpreserved LFO errors on appeal as a matter of right. Suppl. Br. of Pet'r (Blazina) at 3. In *State v. Jones*, 182 Wn.2d 1, 338 P.3d 278 (2014), a recent unanimous decision by this court, we said that *Ford* held unpreserved sentencing errors "may be raised for the first time upon appeal because sentencing can implicate fundamental principles of due process if the sentence is based on information that is false, lacks a minimum indicia of reliability, or is unsupported in the record." *Jones*, 182 Wn.2d at 6. However, we find the exception created by *Ford* does not apply in this case.

Unpreserved LFO errors do not command review as a matter of right under *Ford* and its progeny. As stated in *Ford* and reiterated in our subsequent cases, concern about sentence conformity motivated our decision to allow review of sentencing errors raised for the first time on appeal. *See Ford*, 137 Wn.2d at 478. We did not want to "'permit[] widely varying sentences to stand for no reason other than the failure of counsel to register a proper objection in the trial court.'" *Id.* (quoting *State v. Paine*, 69 Wn. App. 873, 884, 850 P.2d 1369 (1993)). Errors in calculating offender scores and the imposition of vague community custody requirements create this sort of sentencing error and properly fall within this narrow category. *See State v. Mendoza*, 165 Wn.2d 913, 919-20, 205 P.3d 113 (2009) (prior convictions for sentencing range calculation); *Ford*, 137 Wn.2d at 475-78 (classification of out of state convictions for offender score calculation); *State v. Bahl*, 164 Wn.2d 739, 743-45, 193 P.3d 678 (2008) (community custody conditions of sentence). We thought it justifiable to review these challenges

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

raised for the first time on appeal because the error, if permitted to stand, would create inconsistent sentences for the same crime and because some defendants would receive unjust punishment simply because his or her attorney failed to object.

But allowing challenges to discretionary LFO orders would not promote sentencing uniformity in the same way. The trial court must decide to impose LFOs and must consider the defendant's current or future ability to pay those LFOs based on the particular facts of the defendant's case. *See* RCW 10.01.160(3). The legislature did not intend LFO orders to be uniform among cases of similar crimes. Rather, it intended each judge to conduct a case-by-case analysis and arrive at an LFO order appropriate to the individual defendant's circumstances. Though the statute mandates that a trial judge consider the defendant's ability to pay and, here, the trial judges erred by failing to consider, this error will not taint sentencing for similar crimes in the future. The error is unique to these defendants' circumstances, and the Court of Appeals properly exercised its discretion to decline review.

Although the Court of Appeals properly declined discretionary review, RAP 2.5(a) governs the review of issues not raised in the trial court for all appellate courts, including this one. While appellate courts normally decline to review issues raised for the first time on appeal, *see Roberson v. Perez*, 156 Wn.2d 33, 39, 123 P.3d 844 (2005), RAP 2.5(a) grants appellate courts discretion to accept review of claimed errors not appealed as a matter of right.[3] *State v. Russell*, 171 Wn.2d 118, 122, 249 P.3d 604 (2011). Each

---

[3] RAP 2.5(a) states, "The appellate court may refuse to review any claim of error which was not raised in the trial court."

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

appellate court must make its own decision to accept discretionary review. National and local cries for reform of broken LFO systems demand that this court exercise its RAP 2.5(a) discretion and reach the merits of this case.

At a national level, organizations have chronicled problems associated with LFOs imposed against indigent defendants. These problems include increased difficulty in reentering society, the doubtful recoupment of money by the government, and inequities in administration. In 2010, the American Civil Liberties Union issued a report that chronicled the problems associated with LFOs in five states—including Washington— and recommended reforms to state and to local officials. AM. CIVIL LIBERTIES UNION, IN FOR A PENNY: THE RISE OF AMERICA'S NEW DEBTORS' PRISONS (2010) (ACLU), *available at* https://www.aclu.org/files/assets/InForAPenny_web.pdf. That same year, the Brennan Center for Justice at New York University School of Law published a report outlining the problems with criminal debt, most notably the impediment it creates to reentry and rehabilitation. ALICIA BANNON, MITALI NAGRECHA & REBEKAH DILLER, BRENNAN CTR. FOR JUSTICE, CRIMINAL JUSTICE DEBT: A BARRIER TO REENTRY (2010), *available at* http://www.brennancenter.org/sites/default/files/legacy /Fees%20and%20Fines%20FINAL.pdf. Two years later, the Brennan Center followed up with "A Toolkit for Action" that proposed five specific reforms to combat the problems caused by inequitable LFO systems. ROOPAL PATEL & MEGHNA PHILIP, BRENNAN CTR. FOR JUSTICE, CRIMINAL JUSTICE DEBT: A TOOLKIT FOR ACTION (2012), *available at* http://www.brennancenter.org/sites/default/files/legacy/publications /Criminal%20Justice%20Debt%20Background%20for%20web.pdf. As part of its second

7

proposed reform, the Brennan Center advocated that courts must determine a person's ability to pay before the court imposes LFOs. *Id.* at 14.

Washington has contributed its own voice to this national conversation. In 2008, the Washington State Minority and Justice Commission issued a report that assessed the problems with the LFO system in Washington. KATHERINE A. BECKETT, ALEXES M. HARRIS & HEATHER EVANS, WASH. STATE MINORITY & JUSTICE COMM'N, THE ASSESSMENT AND CONSEQUENCES OF LEGAL FINANCIAL OBLIGATIONS IN WASHINGTON STATE (2008) (WASH. STATE MINORITY & JUSTICE COMM'N), *available at* http://www.courts.wa.gov/committee/pdf/2008LFO_report.pdf. This conversation remains important to our state and to our court system.

As amici[4] and the above-referenced reports point out, Washington's LFO system carries problematic consequences. To begin with, LFOs accrue interest at a rate of 12 percent and may also accumulate collection fees when they are not paid on time. RCW 10.82.090(1); Travis Stearns, *Legal Financial Obligations: Fulfilling the Promise of Gideon by Reducing the Burden*, 11 SEATTLE J. SOC. JUST. 963, 967 (2013). Many defendants cannot afford these high sums and either do not pay at all or contribute a small amount every month. WASH. STATE MINORITY & JUSTICE COMM'N, *supra*, at 21. But on average, a person who pays $25 per month toward their LFOs will owe the state more 10 years after conviction than they did when the LFOs were initially assessed. *Id.* at 22.

---

[4] This court received a joint amici curiae brief from the Washington Defender Association, the American Civil Liberties Union of Washington, Columbia Legal Services, the Center for Justice, and the Washington Association of Criminal Defense Lawyers.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Consequently, indigent offenders owe higher LFO sums than their wealthier counterparts because they cannot afford to pay, which allows interest to accumulate and to increase the total amount that they owe. *See id.* at 21-22. The inability to pay off the LFOs means that courts retain jurisdiction over impoverished offenders long after they are released from prison because the court maintains jurisdiction until they completely satisfy their LFOs. *Id.* at 9-11; RCW 9.94A.760(4) ("For an offense committed on or after July 1, 2000, the court shall retain jurisdiction over the offender, for purposes of the offender's compliance with payment of the legal financial obligations, until the obligation is completely satisfied, regardless of the statutory maximum for the crime."). The court's long-term involvement in defendants' lives inhibits reentry: legal or background checks will show an active record in superior court for individuals who have not fully paid their LFOs. ACLU, *supra*, at 68-69. This active record can have serious negative consequences on employment, on housing, and on finances. *Id.* at 69. LFO debt also impacts credit ratings, making it more difficult to find secure housing. WASH. STATE MINORITY & JUSTICE COMM'N, *supra*, at 43. All of these reentry difficulties increase the chances of recidivism. *Id.* at 68.

Moreover, the state cannot collect money from defendants who cannot pay, which obviates one of the reasons for courts to impose LFOs. *See* RCW 9.94A.030. For example, for three quarters of the cases sentenced in the first two months of 2004, less than 20 percent of LFOs had been paid three years after sentencing. WASH. STATE MINORITY & JUSTICE COMM'N, *supra*, at 20.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Significant disparities also exist in the administration of LFOs in Washington. For example, drug-related offenses, offenses resulting in trial, Latino defendants, and male defendants all receive disproportionately high LFO penalties. *Id.* at 28-29. Additionally, counties with smaller populations, higher violent crime rates, and smaller proportions of their budget spent on law and justice assess higher LFO penalties than other Washington counties. *Id.*

Blazina and Paige-Colter argue that, in order to impose discretionary LFOs under RCW 10.01.160(3), the sentencing judge must consider the defendant's individual financial circumstances and make an individualized inquiry into the defendant's current and future ability to pay. Suppl. Br. of Pet'r (Blazina) at 8. They also argue that the record must reflect this inquiry. We agree. By statute, "[t]he court *shall not* order a defendant to pay costs unless the defendant is or will be able to pay them." RCW 10.01.160(3) (emphasis added). To determine the amount and method for paying the costs, "the court *shall* take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose." *Id.* (emphasis added).

As a general rule, we treat the word "shall" as presumptively imperative—we presume it creates a duty rather than confers discretion. *State v. Bartholomew*, 104 Wn.2d 844, 848, 710 P.2d 196 (1985). Here, the statute follows this general rule. Because the legislature used the word "may" 11 times and the word "shall" eight times in RCW 10.01.160, we hold that the legislature intended the two words to have different meanings, with "shall" being imperative.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Practically speaking, this imperative under RCW 10.01.160(3) means that the court must do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry. The record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay. Within this inquiry, the court must also consider important factors, as amici suggest, such as incarceration and a defendant's other debts, including restitution, when determining a defendant's ability to pay.

Courts should also look to the comment in court rule GR 34 for guidance. This rule allows a person to obtain a waiver of filing fees and surcharges on the basis of indigent status, and the comment to the rule lists ways that a person may prove indigent status. GR 34. For example, under the rule, courts must find a person indigent if the person establishes that he or she receives assistance from a needs-based, means-tested assistance program, such as Social Security or food stamps. *Id.* (comment listing facts that prove indigent status). In addition, courts must find a person indigent if his or her household income falls below 125 percent of the federal poverty guideline. *Id.* Although the ways to establish indigent status remain nonexhaustive, *see id.*, if someone does meet the GR 34 standard for indigency, courts should seriously question that person's ability to pay LFOs.

CONCLUSION

At sentencing, judges ordered Blazina and Paige-Colter to pay LFOs under RCW 10.01.160(3). The records, however, do not show that the trial judges considered either defendant's ability to pay before imposing the LFOs. The defendants did not object at

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

sentencing. Instead, they raised the issue for the first time on appeal. Although appellate courts will normally decline to hear unpreserved claims of error, we take this occasion to emphasize the trial court's obligation to consider the defendant's ability to pay.

We hold that RCW 10.01.160(3) requires the record to reflect that the sentencing judge made an individualized inquiry into the defendant's current and future ability to pay before the court imposes LFOs. This inquiry also requires the court to consider important factors, such as incarceration and a defendant's other debts, including restitution, when determining a defendant's ability to pay. Because the records in this case do not show that the sentencing judges made this inquiry into either defendant's ability to pay, we remand the cases to the trial courts for new sentence hearings.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

_Madsen, C.J._

WE CONCUR:

_Wiggins, J._

_González, J._

_Gordon McCloud, J._

O.P.T.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 89028-5

FAIRHURST, J. (concurring in the result)—I agree with the majority that RCW 10.01.160(3) requires a sentencing judge to make an individualized determination into a defendant's current and future ability to pay before the court imposes legal financial obligations (LFOs). I also agree that the trial judges in these cases did not consider either defendant's ability to pay before imposing LFOs. Because the error was unpreserved, I also agree that we must determine whether it should be addressed for the first time on appeal. RAP 2.5(a).

I disagree with how the majority applies RAP 2.5(a). RAP 2.5(a) contains three exceptions on which unpreserved errors can be raised for the first time on appeal. While the majority does not indicate which of the three exceptions it is applying to reach the merits, it is likely attempting to use RAP 2.5(a)(3), "manifest error affecting a constitutional right."[1] However, the majority fails to apply the three part test from *State v. O'Hara*, 167 Wn.2d 91, 98-100, 217 P.3d 756 (2009), that established what an appellant must demonstrate for an appellate court to reach an unpreserved error under RAP 2.5(a)(3).

---

[1]The other two exceptions, "(1) lack of trial court jurisdiction" and "(2) failure to establish facts upon which relief can be granted," are not applicable. RAP 2.5(a).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

In *O'Hara*, we found that to meet RAP 2.5(a)(3) and raise an error for the first time on appeal, an appellant must demonstrate the error is manifest and the error is truly of constitutional dimension. *Id.* at 98. Next, if a court finds a manifest constitutional error, it may still be subject to a harmless error analysis. *Id.*

Here, the error is not constitutional in nature and thus the unpreserved error cannot be reached under a RAP 2.5(a)(3) analysis. In analyzing the asserted constitutional interest, we do not assume the alleged error is of constitutional magnitude but instead look at the asserted claim and assess whether, if correct, it implicates a constitutional interest as compared to another form of trial error. *Id.*

The trial court judges in *Blazina* and *Paige-Colter* did not inquire into the defendants' ability to pay LFOs, which violates RCW 10.01.160(3). RCW 10.01.160(3) provides:

> The court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

Failing to determine a defendant's ability to pay LFOs violates the statute but does not implicate a constitutional right.

Although the unpreserved error does not meet the RAP 2.5(a)(3) standard from *O'Hara*, I would hold that this error can be reached by applying RAP 1.2(a),

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

which states that the "rules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits." RAP 1.2(a) is rarely used, but this is an appropriate case for the court to exercise its discretion to reach the unpreserved error because of the widespread problems, as stated in the majority, associated with LFOs imposed against indigent defendants. Majority at 6.

The consequences of the State's LFO system are concerning, and addressing where courts are falling short of the statute will promote justice. In *State v. Aho*, 137 Wn.2d 736, 740-41, 975 P.2d 512 (1999), we held that the supreme court "has the authority to determine whether a matter is properly before the court, to perform those acts which are proper to secure fair and orderly review, and to waive the rules of appellate procedure when necessary 'to serve the ends of justice.'" (quoting RAP 1.2(c)). I agree with the majority that RCW 10.01.160(3) requires sentencing judges to take a defendant's individual financial circumstances into account and make an individual determination into the defendant's current and future ability to pay. In order to ensure that indigent defendants are treated as the statute requires, we should reach the unpreserved error.

For the foregoing reasons, I concur in the result only.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Blazina; State v. Paige-Colter*, No. 89028-5
(Fairhurst, J., concurring in the result)

Fairhurst. J.

Stephens. J.