

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73240-4-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| GLEN EARL SIMS, | ) | |
| | ) | FILED: April 25, 2016 |
| Appellant. | ) | |
| | ) | |

APPELWICK, J. — Sims was convicted of possession of methamphetamine. During sentencing, Sims argued that his previous federal convictions for possession of methamphetamine with intent to distribute and possession of a firearm in furtherance of a drug trafficking offense constituted the same criminal conduct. The trial court rejected this argument and counted each conviction separately in Sims's offender score. We reverse and remand for resentencing.

## FACTS

The State charged Glen Sims with Violation of the Uniform Controlled Substances Act[1] for the possession of methamphetamine (meth). A jury found Sims guilty as charged on February 24, 2015. At sentencing, the parties

---

[1] RCW 69.50.4013.

disagreed about whether Sims's prior federal convictions constituted the same criminal conduct. Consequently, the parties disputed how to calculate Sims's offender score.

Sims's criminal history includes convictions for five federal offenses based on events that took place on July 31, 2004: (1) felon in possession of a firearm, (2) felon in possession of ammunition, (3) felon in possession of body armor, (4) possession of meth with intent to distribute, and (5) possession of a firearm in furtherance of a drug trafficking offense. Sims was sentenced on April 28, 2006. The offenses were sentenced concurrently. Sims also had a 1995 federal conviction for felon in possession of a firearm, a 1993 conviction for a controlled substance violation, and a 1990 assault conviction.

During sentencing for Sims's current offense, Sims conceded that the three earliest convictions counted as one point each toward his offender score. But, he argued that the 2004 federal convictions should merge together and be scored as only a single point, resulting in an offender score of four.[2] By contrast, the State argued that the proper offender score was a seven. The State

_____

[2] Below, Sims argued that a federal court had already made the determination that the federal offenses constituted the same criminal conduct. He noted that the offenses were sentenced concurrently. Although the State did not dispute that the offenses were sentenced concurrently, it asserted there was nothing in the record indicating that the federal court made a finding of same criminal conduct. We see nothing in the record indicating that the federal court made a finding of same criminal conduct. If there was no such finding, and even if the court ordered that the sentences be served concurrently, the current sentencing court needed to make its own determination using the same criminal conduct analysis in RCW 9.94A.589(1)(a). RCW 9.94A.525(5)(a)(i); State v. Johnson, 180 Wn. App. 92, 101, n.1, 320 P.3d 197, review denied, 181 Wn.2d 1003, 332 P.3d 984 (2014).

conceded that possession of a firearm in furtherance of a drug trafficking offense is the same criminal conduct as felon in possession of a firearm. But, it argued that the remaining 2004 crimes—possession of ammunition, possession of body armor, and possession of meth with intent to distribute—did not constitute the same criminal conduct as possession of a firearm, because they did not share a common criminal purpose and were not in furtherance of one another. Therefore, it argued that the five 2004 offenses be counted as four points total.

The trial court concluded that the felon in possession of a firearm, the felon in possession of ammunition, and the possession of a firearm in furtherance of a drug trafficking offense counts constituted the same criminal conduct. But, it concluded that the possession of body armor and possession of meth with intent to distribute were independent offenses. Consequently, it scored the five 2004 offenses as a three. And, it sentenced Sims based on an offender score of six. The trial court imposed a standard range sentence of 12 months plus one day. The trial court also ordered $1,104 in financial obligations—a $500 victim penalty assessment, a $100 DNA (deoxyribonucleic acid) fee, and $504 in court costs. Sims appeals.

## DISCUSSION

Sims makes two arguments on appeal. First, he asserts that the trial court erred by miscalculating his offender score. Then, he maintains the trial court erred by failing to consider his ability to pay discretionary legal financial obligations before imposing them.

3

I. <u>Same Criminal Conduct</u>

Sims argues that the trial court erred by failing to accurately count his 2004 federal convictions for purposes of his offender score. He claims that his conviction for possession of meth with intent to distribute should be considered the same criminal conduct as his conviction for possession of a firearm in furtherance of a drug trafficking offense.

When calculating an offender score, the trial court is to count all prior convictions separately unless two or more of the prior convictions encompass the same criminal conduct. RCW 9.94A.525(5)(a)(i). Crimes constitute the same criminal conduct when they "require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). Unless all elements are present, the offenses must be counted separately. <u>State v. Porter</u>, 133 Wn.2d 177, 181, 942 P.2d 974 (1997). The defendant bears the burden of proving same criminal conduct. <u>State v. Graciano</u>, 176 Wn.2d 531, 539, 295 P.3d 219 (2013). This court reviews determinations of same criminal conduct for abuse of discretion or misapplication of law. <u>Id.</u> at 535.

Here, only whether the criminal intent of the two offenses is the same is at issue. The parties agree that the offenses were committed at the same time and place and involve the same victim—the public. But, they disagree as to whether possession of meth with intent to distribute and possession of a firearm in furtherance of a drug trafficking offense share the same criminal intent.

4

In order to be convicted of possession of meth with intent to distribute, Sims had to knowingly or intentionally possess meth with the intent to distribute it. 21 U.S.C. § 841(a)(1) (2004). In order to be convicted of possessing a firearm in furtherance of a drug trafficking offense, Sims had to use or carry a firearm during and in relation to any drug trafficking crime. 18 U.S.C. § 924(c)(1)(A) (2004). Or, Sims had to possess a firearm in furtherance of a drug trafficking crime.[3] Id.

Offenses have the same criminal intent when, viewed objectively, the intent does not change from one offense to the next. State v. Dunaway, 109 Wn.2d 207, 215, 743 P.2d 1237, 749 P.2d 160 (1987). Intent, in this context is not the particular *mens rea* element of the particular crime, but rather is the offender's objective criminal purpose in committing the crime. State v. Kloepper, 179 Wn. App. 343, 357, 317 P.3d 1088, review denied, 180 Wn.2d 1017, 327 P.3d 55 (2014); State v. Adame, 56 Wn. App. 803, 811, 785 P.2d 1144 (1990).[4]

---

[3] Although not explicitly indicated in the statute, federal case law indicates that "knowingly" is also a required element. See United States v. Woodward, 531 F.3d 1352, 1362 (11th Cir. 2008).

[4] In Adame, Adame argued that his convictions for possession of controlled substances and unlawful possession of a firearm constituted the same criminal conduct. 56 Wn. App. at 809. The Adame court reasoned that the purpose of possessing drugs is to use or sell them, whereas the purpose of possessing a firearm is less clear. Id. at 811. Consequently, for the firearm conviction, the Adame court turned to the facts. Id. And, it concluded that, based on the facts, the crimes did not constitute the same criminal conduct. Id.

Possession of meth with intent to distribute and possession of a firearm in furtherance of a drug trafficking offense are not mere possession crimes like those found not to constitute same criminal conduct in Adame. Here, it is clear that the statutory criminal intent of possession of meth with intent to distribute and possession of a firearm in furtherance of a drug trafficking offense does not preclude a finding of same criminal conduct.[5] The statutory criminal intent of possession of meth with intent to distribute is clearly to traffic drugs. Similarly, the statutory criminal intent of possessing a firearm in furtherance of a drug trafficking offense is to traffic drugs.

Moreover, Sims's objective criminal purpose was to traffic drugs. Sims's intent did not change from one crime to the next. Here, the basis for these federal convictions began with a traffic stop. On July 31, 2004, King County Sheriff deputies conducted a traffic stop of a vehicle. Sims was a passenger in the vehicle. The deputies recognized Sims as a suspect for an assault that had taken place a few days earlier. The deputies asked Sims to exit the vehicle, and asked him if he had any weapons. Sims told them he had knives. The deputies noticed that Sims was wearing a bulletproof vest. Officers then found a pistol in the passenger area of the vehicle where Sims had been sitting. The driver of the vehicle informed the deputies that when he had picked Sims up, Sims had a blue cooler with him. The driver also informed the deputies that Sims had said he had

---

[5] We note that Sims was sentenced prior to the Washington Supreme Court's recent decision in State v. Chenoweth, No. 91366-8 (Wash. March 17, 2016). Similarly, the parties submitted their briefs prior to the decision in Chenoweth. Our analysis is not inconsistent with Chenoweth.

a gun. Deputies searched the car and found the blue cooler. Inside the cooler, the deputies found a locked safe box and nine millimeter ammunition. The deputies also located keys for the locked safe, and obtained a warrant to search it. Inside, they found meth and a digital scale and baggies often used to measure and package meth. These facts were the basis of the federal complaint filed against Sims. The jury convicted Sims of both crimes at issue here. The jury was instructed that it could convict Sims of the firearm charge only if it first found Sims guilty of the possession of meth charge.

Therefore, we hold that the trial court misapplied the law when it declined to find that Sims's convictions of possession of meth with intent to distribute and possession of a firearm in furtherance of a drug trafficking offense constituted the same criminal conduct.

The State argues that even if the trial court erred in declining to count the possession of meth offense as the same criminal conduct as the possession of the firearm offense, that it still calculated Sims's offender score correctly. In other words, it argues that any error was harmless. It argues this is so, because Sims does not argue that those two offenses are also the same criminal conduct as the felon in possession of a firearm and felon in possession of ammunition offenses. And, the State notes the trial court explicitly concluded that the possession of meth offense was a crime separate from those two offenses.

We reject the State's unsupported assertion. If the possession of meth offense and the possession of firearm in furtherance of a drug trafficking offense constitute the same criminal conduct, and if the firearm in furtherance offense is a part of the same criminal conduct as the felon in possession of a firearm and felon in possession of ammunition offenses (which the State does not challenge) then, necessarily, they all constitute same criminal conduct for offender score purposes. The trial court miscalculated Sims's offender score. We reverse and remand for resentencing.

II. Legal Financial Obligations

Next, Sims argues that the trial court erred in imposing $504 in discretionary court costs as a legal financial obligation (LFO), because it failed to make an individualized inquiry into Sims's current and future ability to pay. A trial court has a statutory obligation to make an individualized inquiry into a defendant's current and future ability to pay before the court imposes discretionary LFOs. State v. Blazina, 182 Wn.2d 827, 830, 344 P.3d 680 (2015).

Sims did not object to the imposition of the discretionary LFOs at sentencing. A defendant who does not object to the imposition of these costs at sentencing is not automatically entitled to review. Blazina, 182 Wn.2d at 832. But, we exercise our discretion under RAP 2.5(a) to reach the merits of Sims's LFO claim. See id. at 834-35 (noting that an appellate court may exercise its discretion in reviewing unpreserved LFO claims). The State concedes that the trial court's failure to make an individualized inquiry into Sims's ability to pay was

8

error in light of <u>Blazina</u>. As a result, we remand to the trial court to make the individualized inquiry into Sims's ability to pay as is required under <u>Blazina</u>.

We reverse and remand for resentencing.

WE CONCUR: