IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | No. 74567-1-I |
| Respondent, | |
| v. | DIVISION ONE |
| JOHN PATRICK BLACKMON, | UNPUBLISHED OPINION |
| Appellant. | FILED: June 12, 2017 |

LEACH, J. — In his second appeal to this court, John Blackmon challenges the trial court's decision to impose discretionary legal financial obligations (LFOs).[1] Because the trial court considered whether the evidence before it showed that Blackmon had the ability to pay, it satisfied its duty to make an individualized inquiry under State v. Blazina.[2] We affirm.

BACKGROUND

The State charged John Blackmon with two counts of child molestation in the second degree, two counts of child molestation in the third degree, and one count of rape of a child. At the conclusion of a third trial, after two mistrials, a jury convicted Blackmon as charged.

---

[1] The facts of Blackmon's underlying offenses are described in our opinion addressing his first appeal, State v. Blackmon, No. 70955-1-I, slip op. at 2-3 (Wash. Ct. App. Dec. 22, 2014) (unpublished), http://www.courts.wa.gov/opinions/pdf/709551/pdf, review denied, 183 Wn.2d 1019 (2015).
[2] 182 Wn.2d 827, 344 P.3d 680 (2015).

Judge Michael T. Downes presided over all three trials and both sentencing hearings. During the trials, the court heard evidence bearing on Blackmon's financial circumstances. Specifically, the court heard testimony that the defendant had worked as a "tech guy" for Microsoft for 12 years before he became a "stay-at-home-dad." It also heard testimony that Blackmon offered to pay the victim, his daughter, $100 to perform oral sex on him and that he bought his daughter and his other children expensive gifts. In addition, Blackmon's own testimony about his activities around the house, when he described working in the yard, in the crawl space, and on the roof, showed that he was physically capable of working.

Initially, the court imposed an exceptional sentence of 176 months' confinement followed by 36 months in community custody.[3] The judgment included a community custody condition that required Blackmon to "[f]ind and maintain fulltime employment and/or a fulltime educational program during the period of supervision." Blackmon objected to this condition. He claimed that he had been "unable to work and receiving disability benefits for years." But he did not support this claim with any evidence, and the court imposed the condition. The trial court also imposed both mandatory and discretionary LFOs.

Blackmon appealed and raised a number of challenges to his convictions and sentence.[4] We rejected all but one of his arguments.[5] We accepted the State's concession that the trial court exceeded the statutory maximum sentence

---

[3] RCW 9.94A.535(2)(c).
[4] See Blackmon, No. 70955-1-I, slip op. at 1.
[5] Blackmon, No. 70955-1-I, slip op. at 1.

when it imposed the statutory maximum term of confinement plus the term of community custody.[6] Thus, we remanded for resentencing.[7]

At the resentencing hearing, the trial court modified the sentence to comply with our decision. This reduced the amount of community custody.

Blackmon asked the court to consider his LFOs in light of Blazina, which the Supreme Court had decided after Blackmon's first sentencing hearing. Blackmon asked the court to waive discretionary LFOs, asserting that he is partially disabled and unable to work. Again, he supplied no evidence to support this claim.

The court decided that the information before it showed that Blackmon had the ability to pay court costs. It stated,

> With regard to money. Counsel, I don't have any information in front of me in any usable form that Mr. Blackmon is, in fact, indigent. The testimony at the trial involved—there was ownership of a home, there was a divorce. I don't know what the divorce settlement was. I don't know who got money. There was something to do with insurance proceeds. I don't know how much the insurance proceeds were. I don't know who they went to, what they were spent for. Given all of that, given the defendant, to my knowledge, has never been screened and found to be indigent, and that he apparently very well may and likely does have access to some significant resources, I'm going to impose the financial conditions which were requested.
>
> Now, if there's other information that I'm unaware of, and if after the sentencing hearing it's somehow or other appropriate to have another hearing on this issue, then you can try to have another hearing on the issue.
>
> But the testimony from the trial was that Mr. Blackmon, in fact, had access to resources, and I have no idea what happened. I don't even know if the divorce case is over, to tell you the truth. But I have

---

[6] Blackmon, No. 70955-1-I, slip op. at 22-23.
[7] Blackmon, No. 70955-1-I, slip op. at 24.

-3-

no idea what the split of assets would have been or what happened to them.

The court imposed $600.00 in mandatory costs and $1,793.82 in discretionary court costs to be paid in monthly installments of $60.00, starting 30 days after his release.

The amended judgment contains the following boilerplate language:

> **2.5** **ABILITY TO PAY LEGAL FINANCIAL OBLIGATIONS.** The court has considered the total amount owing, the defendant's past, present and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change. (RCW 10.01.160). The court finds that the defendant is an adult and is not disabled and therefore the defendant has the ability or likely future ability to pay the legal financial obligations imposed herein. RCW 9.94A.753.

Later, Blackmon asked the court to allow him to seek review at public expense. He filed a declaration that references an order of indigency from a civil case and an affidavit in which he stated he is permanently disabled. The affidavit also states that he has no debts other than the LFOs. The trial court granted Blackmon's request, permitting him to appeal in forma pauperis. The trial court entered a supplemental order of indigency confirming that the court had previously found the defendant to be indigent and ordering that verbatim reports of proceedings be prepared at public expense.

ANALYSIS

Blackman challenges the trial court's decision to impose discretionary LFOs. We review a decision to impose LFOs for abuse of discretion.[8] A court

---

[8] State v. Clark, 191 Wn. App. 369, 372, 362 P.3d 309 (2015).

abuses its discretion when it makes a decision on untenable grounds or for untenable reasons.[9]

Blackmon asserts that the trial court did not make an individualized inquiry into his ability to pay before it imposed discretionary LFOs. RCW 10.01.160(3) authorizes courts to impose discretionary costs at sentencing. But it provides that a court

> shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.[10]

Our Supreme Court, in Blazina, clarified that a trial court must conduct "an individualized inquiry into the defendant's current and future ability to pay" before it may impose discretionary LFOs.[11] It must consider factors such as incarceration and the defendant's other debts.[12] In order for this court to affirm an imposition of discretionary LFOs, the record must reflect that the trial court made this inquiry.[13] Including boilerplate language in the judgment and sentence stating that the defendant has an ability to pay does not satisfy this requirement.[14]

The amended judgment contains standard boilerplate language. But the transcript of the resentencing hearing shows that the trial court considered Blackmon's financial circumstances.

---

[9] Clark, 191 Wn. App. at 372.
[10] RCW 10.01.160(3).
[11] Blazina, 182 Wn.2d at 838.
[12] Blazina, 182 Wn.2d at 838.
[13] Blazina, 182 Wn.2d at 839.
[14] Blazina, 182 Wn.2d at 838.

Judge Downes presided over all three trials and heard all the evidence, and he indicated that he had reviewed the facts of the case before sentencing. At the sentencing hearing, the court relied on the trial testimony to find that Blackmon had access to resources.

Ideally, the court should have asked about the nature of his claimed disability or his ability to work or stated its conclusions about those questions on the record. However, because it found Blackmon had access to resources, the court had a proper basis for concluding Blackmon could afford to pay the LFOs it imposed. Although this is a close case, we find that the court made an adequate inquiry into Blackmon's ability to pay.

Blackmon also asserts that the evidence before the court does not support its findings in the judgment and sentence. Specifically, he challenges the findings that the court considered Blackmon's ability to pay and that Blackmon is not disabled and therefore "has the ability or likely future ability to pay."

Neither RCW 10.01.160 nor the constitution requires a trial court to enter specific findings about a defendant's ability to pay discretionary court costs.[15] But if the court does make any findings of fact, we review them under the clearly erroneous standard.[16] A finding of fact is clearly erroneous when, although some evidence supports it, review of all the evidence leads to a definite and firm conviction that the court has made a mistake.[17]

---

[15] State v. Lundy, 176 Wn. App. 96, 105, 308 P.3d 755 (2013).
[16] Lundy, 176 Wn. App. at 96.
[17] Lundy, 176 Wn. App. at 96.

Here, the trial court's comments at sentencing show it reviewed the record before sentencing and, based on that record, considered Blackmon's ability to pay. Thus, the court's finding that it considered Blackmon's ability to pay is not clearly erroneous.

Nor is the court's finding that Blackmon is not disabled clearly erroneous. Blackmon claims he is unable to work due to a partial disability. But contrary to Blackmon's unsupported statements that he is disabled, the record shows he had the ability to work. Blackmon maintained employment at Microsoft for 12 years, and the record suggests that his later unemployment was voluntary. In addition, Blackmon had the ability to complete maintenance projects at home. Our review of the record persuades us that the trial court's findings are not clearly erroneous.

Finally, Blackmon asks the court to deny the State appellate costs based on his indigency. We generally award appellate costs to the substantially prevailing party on review. However, when the trial court makes a finding that an offender is indigent for purposes of appeal, that finding continues throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency."[18] We follow the trial court and presume Blackmon is indigent. If the State has evidence indicating significant improvement in Blackmon's financial circumstances, it may file a motion for costs with the commissioner.

---

[18] RAP 14.2.

## CONCLUSION

We affirm.

WE CONCUR:

_Leach, J._

_Spearman, J._