IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49505-8-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| JOSHUA WEYTHMAN-BAKER, | |
| Appellant. | |

BJORGEN, C.J. — A jury returned verdicts finding Joshua Weythman-Baker guilty of residential burglary, seven counts of possession of a stolen firearm, first degree unlawful possession of a firearm, possession of a stolen vehicle, second degree possession of stolen property, first degree trafficking in stolen property, and bail jumping. Weythman-Baker appeals from all of his convictions apart from bail jumping, asserting that the trial court's improper admission of "other acts" evidence in violation of ER 404(b) denied his right to a fair trial. Weythman-Baker also appeals from his sentence, asserting that the trial court erred by imposing discretionary legal financial obligations (LFOs) for which he does not have the present or likely future ability to pay.[1] We affirm.

FACTS

On August 15, 2016, Christopher Kendall and his wife returned home from their honeymoon to find that their home had been burglarized. The items taken from their home

---

[1] Additionally, Weythman-Baker requests that we exercise our discretion to waive appellate fees in this matter. Because Weythman-Baker's current or likely future ability to pay appellate costs may be addressed by a commissioner of this court under RAP 14.2, we defer this matter to our commissioner in the event the State files a cost bill.

included a car, a gun safe that had been bolted to a wall, and seven operable firearms. Kendall and his wife reported the burglary to police and spent the night at Kendall's mother's home. When they returned the next day, they saw that their home had again been burglarized.

After receiving a report of the burglaries, Mason County Sheriff's Deputy Christopher Gaynor recalled seeing a pried-open gun safe in the garage of a foreclosed home at 150 East Budd Drive a couple of days earlier. The home next door at 170 East Budd Drive had also been foreclosed upon, and no one had been given permission to occupy either home. On August 16, 2016, Mason County sheriff's deputies went to the homes at 150 and 170 East Budd Drive to investigate the suspected burglaries.

When they arrived, officers heard voices inside the garage of the home at 170 East Budd Drive and ordered the occupants to exit. A man named James Gitchel exited and told officers that another man named Benjamin Betsch was inside of the home. Deputy Justin Cotte released a police dog to search the home, and the dog located Weythman-Baker in a bedroom closet. Cotte arrested Weythman-Baker on an outstanding warrant. While the police dog continued searching the home, a female exited from a back bedroom. Betsch also eventually exited the home. Betsch had been hiding in a crawl space beneath the home, which he had accessed through a hatch located in a walk-in closet in the master bedroom.

Officers secured a warrant to search the homes. The officers located items taken from the Kendalls' home throughout the 170 East Budd Drive home, including a handgun and keys to Kendall's car in the closet where the police dog found Weythman-Baker.

The State charged Weythman-Baker by amended information with residential burglary, seven counts of possession of a stolen firearm, first degree unlawful possession of a firearm,

possession of a stolen motor vehicle, second degree possession of stolen property, first degree trafficking in stolen property, and bail jumping. The matter proceeded to a jury trial.

At trial, the State asked Cotte why he had arrested Weythman-Baker, to which defense counsel objected. During a side bar conference, defense counsel argued that evidence of the reasons for Weythman-Baker's arrest had low probative value because police would have been justified in arresting everyone located in the home for trespassing. Defense counsel further argued that the evidence was highly prejudicial in light of Weythman-Baker's bail jumping charge. In response, the State argued that the evidence of Weythman-Baker's outstanding arrest warrant explained the context of his arrest and provided an explanation for why he hid in the closet despite warnings that a police dog would be released in the home to conduct a search. The trial court overruled the objection but instructed the State not to mention any details regarding the basis for Weythman-Baker's arrest warrant. Following the trial court's ruling, the following exchange took place:

[State]: Deputy Cotte, did you arrest Mr. Weythman-Baker?
[Cotte]: Yes, we did.
[State]: And why'd you do it at that time?
[Cotte]: At that time he had a warrant out for his arrest.

Report of Proceedings (RP) at 88.

Betsch testified that his parents had owned the home at 170 East Budd Drive and that he had been illegally living at the home after it was foreclosed upon. Betsch further testified that Weythman-Baker also lived at the home. Additionally, Betsch detailed Weythman-Baker's involvement in the burglaries at the Kendalls' home.

Weythman-Baker stipulated at trial that he had previously been convicted of a serious offense for purposes of his first degree unlawful possession of a firearm charge. The jury returned verdicts finding Weythman-Baker guilty of all the charges against him.

At sentencing, defense counsel addressed the State's LFO request, stating, "I do agree as to the fines, fees and court costs; that [Weythman-Baker] doesn't have any physical or mental disabilities that would prevent him from employment, with the exception of his addiction." RP at 280. The trial court then asked Weythman-Baker if he wanted to address the court, and the following exchange occurred:

> [Weythman-Baker]: Just that like [defense counsel] said, I never have denied my addiction. I've been addicted to methamphetamines more of my life than I haven't. I started smoking when I was 11 years old. I never have had any kind of treatment before. And I probably wouldn't have done a lot of the things that I've done in my life if I wouldn't have been addicted to meth. And you know, just I learned my lesson, you know. And that's all I have to say.
> [Trial Court]: Your attorney indicated that there's nothing outside of being incarcerated that would preclude you from being able to be employed. Is that correct?
> [Weythman-Baker]: Yes. Yeah, yeah—no, I mean I will be employed.

RP at 280. The trial court thereafter imposed discretionary LFOs, which included $1,475 in court costs and $600 in court-appointed attorney fees. Weythman-Baker appeals from his convictions and resulting sentence.

ANALYSIS

Weythman-Baker contends that the trial court erred by admitting evidence that he was arrested on an outstanding warrant. Specifically, Weythman-Baker argues that evidence of his arrest warrant (1) was not relevant to any fact at issue, (2) constituted propensity evidence prohibited under ER 404(b), and (3) even if relevant and admissible under ER 404(b), its probative value was substantially outweighed by the danger of unfair prejudice. The State

4

responds that evidence concerning the basis for Weythman-Baker's arrest was relevant and admissible as res gestae evidence.

We assume without deciding that the trial court erred by admitting evidence that Weythman-Baker was arrested on an outstanding warrant. The assumed error, however, was harmless.

## I. HARMLESS ERROR

An evidentiary error "requires reversal only if the error, within reasonable probability, materially affected the outcome of the trial." *State v. Halstien*, 122 Wn.2d 109, 127, 857 P.2d 270 (1993). Weythman-Baker argues that evidence of his arrest warrant materially affected the outcome of his trial because the State relied in great part on Betsch's testimony, rather than physical evidence, to support several of its charges. Weythman-Baker thus contends that the arrest warrant evidence "gave the jury the opportunity to discard the existence of reasonable doubt upon a belief that the defendant must be guilty because he was a criminal, a conclusion implicit in the fact that there was an outstanding warrant for his arrest." Br. of Appellant at 16. We disagree.

First, we fail to discern how the jury's knowledge of Weythman-Baker's arrest warrant had any identifiable impact on its determination of Betsch's credibility. Second, even if we were to accept Weythman-Baker's argument that the jury could have disregarded its instructions and found him guilty of the charged crimes based on an impermissible inference that he had a propensity to commit crimes, that inference could have been drawn with equal force from his stipulation of having previously committed a serious offense. Weythman-Baker does not challenge this stipulation on appeal. With this stipulation, the evidence that he was arrested on

an outstanding warrant at best added only negligibly to any temptation to convict on the basis of propensity to commit crimes. Accordingly, evidence of Weythman-Baker's arrest warrant did not materially affect the outcome of his trial and, any error in admitting the evidence was harmless.

## II. DISCRETIONARY LFOS

Next, Weythman-Baker contends that the trial court erred by failing to make an adequate inquiry into his financial situation before imposing discretionary LFOs. We disagree.

RCW 10.01.160(3) provides:

> The court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

This requirement applies only to the imposition of discretionary LFOs. *State v. Mathers*, 193 Wn. App. 913, 918-24, 376 P.3d 1163, *review denied*, 186 Wn.2d 1015 (2016).

In *State v. Blazina*, 182 Wn.2d 827, 837-39, 344 P.3d 680 (2015), our Supreme Court held that RCW 10.01.160(3) requires the trial court to make an individualized inquiry into a defendant's current and likely future ability to pay discretionary LFOs before imposing them. *Blazina* further held that the record must reflect that the trial court made this required inquiry. 182 Wn.2d at 838-39. "[T]he court must do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry. The record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay." *Blazina*, 182 Wn.2d at 838.

Here, in response to the State's request for discretionary LFOs, Weythman-Baker's defense counsel stated to the trial court, "I do agree as to the fines, fees and court costs; that

[Weythman-Baker] doesn't have any physical or mental disabilities that would prevent him from employment, with the exception of his addiction." RP at 280. The trial court asked Weythman-Baker if he agreed with his defense counsel's statement, to which Weytham-Baker responded affirmatively and further added that he would be employed after serving his incarceration term.

Defense counsel's statement, Weythman-Baker's affirmation of the statement, and Weythman-Baker's assertion that he would be employed following his incarceration were tantamount to a concession that he had the likely future ability to pay the State's requested discretionary LFOs. In light of such concession, the trial court was relieved of any further obligation to inquire into Weythman-Baker's ability to pay the requested discretionary LFOs before imposing them.

In holding that Weythman-Baker's concession relieved the trial court of any further obligation to inquire about his ability to pay, we are aware of the significant burden LFOs may place upon defendants such as Weythman-Baker. However, where a defendant does not merely fail to object to the imposition of discretionary LFOs but instead affirmatively concedes his or her current or likely future ability to pay those LFOs, a trial court does not err by imposing the LFOs absent further inquiry.

Moreover, where a defendant's concession regarding his or her ability to pay LFOs is mistaken, the defendant is not without recourse. RCW 10.01.160(4) provides that a defendant ordered to pay costs may petition the sentencing court at any time for remission of all or part of the amount owing and may be granted relief upon a showing that the amount due will cause a manifest hardship on the defendant or defendant's immediate family. In addition, interest on LFOs, excluding restitution, may be reduced or waived. RCW 10.82.090(2). Accordingly, we

7

No. 49505-8-II

affirm Weythman-Baker's convictions and resulting sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MORGAN, C.J.

We concur:

WORSWICK, J.

MELNICK, J.