**FILED**
**DECEMBER 24, 2019**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36340-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ELIAS FRANCISCO VARGAS, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Elias Vargas appeals his sentence after his conviction

for second degree assault, two counts of felony harassment, and witness tampering. He

argues the trial court erred in calculating his offender score and also erred in not

sufficiently inquiring into his current and likely future ability to pay discretionary legal

financial obligations (LFOs). The State correctly concedes several issues. We reverse

Vargas's sentence and remand for resentencing.

## FACTS

The facts supporting the charges are unnecessary in our review of the issues

presented. By the time of trial, Vargas faced charges of second degree assault, two counts

of felony harassment, and one count of witness tampering. The State alleged a domestic

violence component for all charges except the second felony harassment count. A jury

found Vargas guilty on all counts and returned a special verdict supporting the domestic

violence component on the three counts where it was alleged.

At sentencing, the trial court considered Vargas's criminal history. The judgment

and sentence includes a 2008 conviction for first degree assault and that Vargas had

committed the current offenses while on community placement or custody. Vargas did

not object to his criminal history.[1] The trial court calculated Vargas's offender score as

follows: count I—8, count II—7, count III—5, and count IV—7.

After asking Vargas a few questions, the trial court also imposed several LFOs,

including a $200 criminal filing fee, a $100 DNA[2] collection fee, and $400 toward

recoupment of court-appointed attorney fees.

Vargas timely appealed to this court.

### ANALYSIS

MISCALCULATED OFFENDER SCORE

Vargas argues the court miscalculated his offender score. The State concedes the

offender score was miscalculated, but disagrees with Vargas's calculation.

---

[1] A defendant's failure to object to his criminal history is treated as an acknowledgment of its correctness. RCW 9.94A.530(2).

[2] Deoxyribonucleic acid.

This court reviews offender score calculations de novo. *State v. Hernandez*, 185 Wn. App. 680, 684, 342 P.3d 820 (2015). A trial court abuses its statutory authority when it imposes a sentence based on a miscalculated offender score. *State v. Rowland*, 97 Wn. App. 301, 304, 983 P.2d 696 (1999). A miscalculated offender score is a sentencing error that may be raised for the first time on appeal. *Id.*

RCW 9.94A.525(1) states:

A prior conviction is a conviction which exists before the date of sentencing for the offense for which the offender score is being computed. Convictions entered or sentenced on the same date as the conviction for which the offender score is being computed shall be deemed "other current offenses" within the meaning of RCW 9.94A.589.

According to Vargas's judgment and sentence, his only prior conviction was first degree assault, with a conviction date of September 15, 2008. Vargas's current conviction of second degree assault is a violent offense, while the other three convictions are nonviolent.

RCW 9.94A.589(1)(a) provides in part:

[W]henever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score . . . .

Thus, the "other current offenses" count as prior convictions when calculating Vargas's score for each conviction.

3

Count I:

Count I is assault in the second degree, with a special allegation of domestic violence. To calculate the offender score, one follows the directive of RCW 9.94A.525(21)(a)-(d): (1) 2 points for a prior serious violent felony, (2) 2 points for one current offense of domestic violence harassment because that crime is included in RCW 9.94A.525(21)(a), (3) 1 point each for the other two nonviolent felony convictions. In addition, 1 point for committing the offense while on community custody. RCW 9.94A.525(19). Vargas's offender score for count I is 7.

Count II:

Count II is felony harassment with a special allegation of domestic violence. Harassment is not a violent offense. As a result, Vargas's prior conviction for first degree assault counts for 1 point. *See* RCW 9.94A.525(7). Other than that distinction, this domestic violence offense is scored the same as count I. Vargas's offender score for Count II is 6.

Count III:

Count III is a nondomestic violence charge of felony harassment. The offense is scored according to RCW 9.94A.525(7)—1 point for each current offense and 1 point for each prior adult felony conviction. Vargas's offender score for count III is 5.

Count IV:

Count IV is tampering with a witness with a special allegation of domestic violence. This is scored almost the same way as count II, a nonviolent domestic offense. The difference is that domestic violence harassment is included in RCW 9.94A.525(21)(a), which allows for 2 points, while tampering with a witness is only counted as 1 point. Vargas's offender score for count IV is 5.

LFOs

Vargas contends the trial court did not conduct an individualized inquiry into his ability to pay before imposing discretionary LFOs. We agree.

In *State v. Blazina*, 182 Wn.2d 827, 839, 344 P.3d 680 (2015), the Supreme Court held that former RCW 10.01.160(3) (2015) requires a court to conduct an individualized inquiry on the record concerning a defendant's current and likely future ability to pay before imposing discretionary LFOs. As part of the inquiry, the trial court must consider "important factors," such as incarceration and the defendant's other debts, when determining a defendant's ability to pay. *Blazina*, 182 Wn.2d at 839. Courts must also consider GR 34, which lists the ways a person may prove indigent status for the purpose of seeking a waiver of filing fees and surcharges. *Id.* "[I]f someone does meet the GR 34

No. 36340-6-III
*State v. Vargas*

standard for indigency, courts should seriously question that person's ability to pay LFOs." *Id.*

Here, the trial court asked Vargas about his work history. Vargas responded that he had worked as a shipping supervisor and had been a certified firefighter for the Department of Natural Resources for several years. Vargas also said he could pay $50 per month once released. This was insufficient under *Blazina*. The information gleaned does not establish that Vargas could currently pay discretionary LFOs. Nor does it establish what other debts he had, or his ability, once released, to work and pay his other debts and discretionary LFOs. On remand, we direct the trial court to conduct a sufficient *Blazina* inquiry prior to imposing discretionary LFOs.

Reversed and remanded for resentencing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Korsmo, J.

Fearing, J.

6