**FILED**
**MARCH 15, 2018**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

STATE OF WASHINGTON,        )        No. 34835-1-III
                           )
        Respondent,         )
                           )
    v.                      )        UNPUBLISHED OPINION
                           )
CHRISTINO SHAWN RENION,      )
                           )
        Appellant.          )

LAWRENCE-BERREY, J. — Christino Shawn Renion appeals his sentence following

his conviction for three counts of felony violation of a protection order. He argues the

trial court erred by (1) counting predicate misdemeanor domestic violence convictions

when calculating his offender score, and (2) assessing discretionary legal financial

obligations (LFOs) without conducting an adequate *Blazina*[1] inquiry. He raises two

additional arguments in his statement of additional grounds for review (SAG). We

reverse the imposition of Renion's discretionary LFOs, but otherwise affirm.

## FACTS

The State charged Renion with three counts of felony violation of a protection

order against his former girlfriend. The charges arose from allegations that he texted the

---

[1] *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015).

girlfriend on three separate days. At trial, the State introduced evidence of three prior

misdemeanor convictions for violating a protection order. The State argued to the jury

that the three convictions served as the predicate offenses to prove the felony charges.

During deliberations, the jury sent an inquiry to the trial court asking what would

happen in the event it could agree on one count but not two others. The trial judge was

unavailable so another judge presided over the brief hearing. Defense counsel suggested

that the judge respond by telling the jury to re-read the instructions and to contact the

bailiff if it could not make a decision. The State agreed. The judge answered the jury's

inquiry in accordance with the parties' agreed response. The jury resumed its

deliberations and found Renion guilty of all three counts.

At sentencing, the trial judge accepted Renion's argument that the three predicate

misdemeanor convictions should not count toward his offender score, and calculated

Renion's offender score as a 4. The trial court next inquired into Renion's ability to pay

discretionary LFOs. The trial court asked Renion about his employment history, if he

could work in a similar capacity after he served his sentence, and if he had equity in real

property or vehicles. Renion told the court he had worked as a prep cook, and he

probably could return to similar work after being released from prison, but that he did not

have any equity in real property or vehicles. The trial court did not ask Renion about the

nature and the extent of his debts. The trial court assessed discretionary LFOs totaling $1,350. Renion did not object.

The State moved for reconsideration of the offender score calculation. The State cited to *State v. Rodriguez*, 183 Wn. App. 947, 335 P.3d 448 (2014), which had not been cited earlier to the trial court. The trial court granted the State's motion for reconsideration and increased Renion's offender score to a 7.

Renion timely appealed.

## ANALYSIS

### PRIOR CONVICTIONS FOR REPETITIVE DOMESTIC VIOLENCE OFFENSES ARE COUNTED TOWARD THE OFFENDER SCORE FOR A PERSON CONVICTED OF A FELONY DOMESTIC VIOLENCE OFFENSE

Renion contends that under the maxim of *expressio unius est exclusio alterius*, predicate misdemeanor offenses that elevate a protection order violation to a felony should not be included in the offender score. In making his argument, he notes that predicate offenses are expressly counted in RCW 9.94A.525(2)(e) for felony driving while under the influence, whereas predicate offenses are not expressly counted in RCW 9.94A.525(21) for felony domestic violence.

This court reviews calculation of an offender score de novo. *State v. Bergstrom*, 162 Wn.2d 87, 92, 169 P.3d 816 (2007). Statutory interpretation also is subject to de novo review. *State v. Rice*, 180 Wn. App. 308, 313, 320 P.3d 723 (2014).

The goal of statutory interpretation is to determine and give effect to the legislature's intent. *State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013). To determine legislative intent, this court first looks to the plain language of the statute considering the text of the provision in question, the context of the statute, and the statutory scheme as a whole. *Id.* If after a plain meaning review the statute is susceptible to more than one interpretation, the statute is ambiguous. *Rice*, 180 Wn. App. at 313. To interpret an ambiguous statute this court relies on "statutory construction, legislative history, and relevant case law to determine legislative intent." *Id.*

Former RCW 9.94A.525(21) (2013) provided:

> If the present conviction is for a felony domestic violence offense where domestic violence as defined in RCW 9.94A.030 was plead and proven, count priors as in subsections (7) through (20) of this section; however, count points as follows:
>
> . . . .
> (c) Count one point for each adult prior conviction for a repetitive domestic violence offense as defined in RCW 9.94A.030, where domestic violence as defined in RCW 9.94A.030, was plead and proven after August 1, 2011.

4

Renion does not cite to *Rodriguez*. In *Rodriguez*, we considered the plain language of RCW 9.94A.525(21). *Rodriguez*, 183 Wn. App. at 957-58. We held that the plain language of the statute did not qualify "repetitive domestic violence offense[s]," and required any such offenses to be counted toward the offender score.[2] *Id.* at 958. Because the statutory language was unambiguous, we did not resort to maxims of statutory construction.

Renion does not dispute that his three predicate offenses qualify as "repetitive domestic violence offenses." Because RCW 9.94A.525(21) unambiguously requires that Renion's predicate offenses be counted for calculating his offender score, we do not resort to maxims of statutory construction. To do so would be improper. *Rice*, 180 Wn. App. at 313. The trial court did not err when it counted Renion's predicate offenses when calculating his offender score.

DISCRETIONARY LFOS

Renion next contends the trial court erred when it assessed discretionary LFOs against him without conducting a sufficient inquiry into his current and likely future ability to pay. The State argues this court should not review the unpreserved issue, but

---

[2] An exception, however, would be if the repetitive domestic violence offense washed out pursuant to RCW 9.94A.525(2)(f).

5

without conceding the issue, agrees to strike discretionary LFOs in the event this court does grant discretionary review. Br. of Resp't at 24. For the reasons discussed below, we accept review of the unpreserved error.

RAP 2.5(a) provides that an "appellate court may refuse to review any claim of error which was not raised in the trial court." For this reason, a defendant who does not object to the imposition of discretionary LFOs at sentencing is not automatically entitled to review. *Blazina*, 182 Wn.2d at 832.

In *Blazina*, our Supreme Court exercised its discretion in favor of reviewing an unpreserved error of great public importance. Prior to *Blazina*, trial courts routinely imposed discretionary LFOs against indigent defendants convicted of felonies. Intermediary appellate courts routinely countenanced this practice despite RCW 10.01.160(3), which provides:

> The court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court *shall* take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

(Emphasis added.) The *Blazina* court stated, as a general rule, "shall" is an imperative that creates a duty. *Id.* at 838. The *Blazina* court further held:

Practically speaking, this imperative under RCW 10.01.160(3) means that the court must do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry. The record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay. *Within this inquiry, the court must also consider important factors . . . such as incarceration and a defendant's other debts, including restitution, when determining a defendant's ability to pay.*

Courts should also look to the comment in court rule GR 34 for guidance. This rule allows a person to obtain a waiver of filing fees and surcharges on the basis of indigent status, and the comment to the rule lists ways that a person may prove indigent status.

*Id.* (emphasis added).

Here, although the trial court attempted a proper *Blazina* inquiry, it failed to

inquire into Renion's debts. Had it inquired, it would have learned the information now

before us: Renion has substantial debts, including child support, which exceed $47,000.

We have no doubt that had the trial court learned of Renion's debts, it would not have

imposed any discretionary LFOs.[3]

---

[3] The dissent notes various inconsistencies in Renion's filings and raises a valid concern that Renion may have overstated his debts. This valid concern does not lessen the trial court's duty to make an adequate *Blazina* inquiry.

Criminal appeals to this division often include an assignment of error that the trial court failed to conduct an adequate *Blazina* inquiry. Often, the trial court's inquiry was not meaningful. Occasionally, such as here, the inquiry was meaningful but inadequate. By reviewing these errors, we hope to reduce their occurrence and thus our need to review them.

Renion's attorney is not guiltless in the trial court's mistake. Renion's attorney should have discussed his client's debts with him before sentencing and should have objected to the trial court's failure to inquire into his client's debts. Such an objection would have resolved the problem currently before us.

But blame is shared. The *Blazina* court makes clear that trial courts have a *duty* to make an adequate inquiry, which includes consideration of debts. Courts, even appellate courts, are in the business of enforcing duties. Were we to not accept review of the unpreserved error, we would be perpetuating the problem the *Blazina* court sought to remedy. We, therefore, accept review of the unpreserved error and remand to the trial court for a proper *Blazina* inquiry. If the State, as it suggests, requests the trial court to strike the discretionary LFOs, no new sentencing hearing is required.

SAG ISSUE #1: JURY INQUIRY

Renion argues the court's response to the jury inquiry was error because the judge who assisted in answering the jury inquiry was not the trial judge and did not know how to answer the jury's question. We disagree.

First, defense counsel, not the court, suggested how to respond to the jury's inquiry. Second, the State agreed to the response. Third, the response was neutral and is the typical response when a jury sends an inquiry to the court.

8

SAG ISSUE #2: INEFFECTIVE ASSISTANCE OF COUNSEL

Renion contends he received ineffective assistance of counsel when his attorney failed to object to the court's response to the jury inquiry. We disagree.

A criminal defendant has a Sixth Amendment to the United States Constitution right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time on appeal." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). The claim is reviewed de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To establish ineffective assistance of counsel, a defendant must prove the following two-pronged test:

> (1) [D]efense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different.

*State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) (citing *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)). We strongly presume trial counsel was effective. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). When this court can characterize counsel's actions as legitimate trial tactics or strategy, we will not find ineffective assistance. *Id.*

Here, the jury appeared close to acquitting Renion of two of the three counts and not being able to agree to the third. Had defense counsel successfully requested the court to declare a mistrial, the result could have been a new trial on all three counts. Such a strategy would be a poor tactic, given that the jury seemed close to acquitting on two counts. We, therefore, reject Renion's ineffective assistance of counsel claim.

Because neither party substantially prevailed, we deny appellate costs.

Affirmed in part, reversed in part, and remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

I CONCUR:

Fearing, C.J.

No. 34835-1-III

SIDDOWAY, J. (Dissenting in part)—I would not remand for a second inquiry into Christino Renion's ability to pay the legal financial obligations (LFOs) imposed by the trial court.

Before Mr. Renion's sentencing, the trial court had received sentencing memoranda from the State and the defense, both of which recognized that Mr. Renion had never been convicted of a felony and was eligible for a first time offender waiver, although the State argued that it should be denied. As Mr. Renion pointed out in his sentencing memorandum, he had "never been sentenced to more than 30 days for any of his other prior domestic violence crimes," which consisted of telephone harassment and violation of no contact orders relating to his former girlfriend. Clerk's Papers (CP) at 264.

The sentencing occurred over a year and a half after our Supreme Court decided *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015), so both the court and counsel were surely aware of the relevance of Mr. Renion's ability to pay LFOs. Given the opportunity to allocute, Mr. Renion told the court that since being in jail, "I've worked for the kitchen. I've worked in maintenance. I've be a feeder. [sic] I'm now commissary." Report of Proceedings (RP) at 175.

The trial court then questioned Mr. Renion about his ability to pay LFOs:

[THE COURT]: Mr. Renion, have you been employed before?
Had you been holding down a job, sir?
MR. RENION: Yes, sir.

No. 34835-1-III
*State v. Renion* (Dissent in Part)

> THE COURT: And what were you doing?
>
> MR. RENION: I was a fry cook or a prep cook.
>
> THE COURT: A what? I'm sorry.
>
> MS. DALAN: A prep cook.
>
> THE COURT: A cook. Okay. So you've got skills as a cook?
>
> MR. RENION: Yes, sir.
>
> THE COURT: When you get out, do you think you'll be able to resume your cooking at restaurants?
>
> MR. RENION: Maybe.
>
> THE COURT: Maybe. But it's a skill set you can take and offer to various restaurants that might want to hire you as a cook?
>
> MR. RENION: Yes, sir.
>
> THE COURT: Okay. I'm asking you some questions for legal purposes and not to embarrass you.
>
> Do you have any assets set aside, any bank accounts with any sums of money in them, sir?
>
> MR. RENION: No, sir.
>
> THE COURT: Okay. Do you own any real property or vehicles that you might have any equity in, sir?
>
> MR. RENION: No.
>
> THE COURT: All right.

RP at 178-79. Based on Mr. Renion's responses, the trial court capped the costs of incarceration, reduced the cost of the Department of Assigned Counsel to $400, and struck the provision of the judgment and sentence making Mr. Renion responsible for any medical costs incurred while incarcerated. It then imposed the LFOs that Mr. Renion now appeals, but did not challenge at the time.

RAP 2.5(a) states the general rule applicable to issues raised for the first time on appeal: we do not review them. If Mr. Renion had a problem with the adequacy of the trial court's *Blazina* inquiry, he should have raised it in the trial court.

2

The majority nonetheless remands for a second inquiry because "[h]ad [the court] inquired, it would have learned the information now before us: Renion has substantial debts, including child support, which exceeds $47,000." Majority at 7. I doubt it. No debts were disclosed in the declaration for an order authorizing the defendant to appeal at public expense that was filed a few days after the sentencing hearing, even though the declaration form asks about any "substantial debts or expenses." CP at 285.

The majority relies, however, on the report as to continued indigency that Mr. Renion filed with this court, the reliability of which I question. The report does reveal that Mr. Renion, age 42, has completed his GED. But it then provides the following information about debts, all, uncommonly, in round numbers:

| | |
|---|---|
| Credit cards, personal loans, or other installment debt: | $ 8,000 |
| Legal financial obligations (LFOs): | $10,000 |
| Medical care debt: | N/A |
| Child support arrears: | $4,000 |
| Other debt: | $25,000 |

Report as to Continued Indigency at 1 (Wash. Ct. App. Dec. 5, 2016) (docketed Mar. 20, 2017). Recall that this defendant with a reported $10,000 in LFOs was eligible for a first time offender waiver. Recall that his declaration in support of an order authorizing appeal at public expense failed to identify any substantial debts or expenses. Note that elsewhere on the report as to continued indigency, Mr. Renion provides no estimate of his monthly debt payments (answering "?" instead) and indicates "N/A" when it comes to his

3

No. 34835-1-III
*State v. Renion* (Dissent in Part)

financial responsibility for any dependents, including children, despite reporting $4,000

in child support arrears. *Id.* at 2.

If Mr. Renion truly has $47,000 in liabilities that had not come up in the court's

questioning of his ability to pay, his trial lawyer should have brought that fact to the trial

court's attention or objected to the trial court's failure to inquire sufficiently. In a case

like this, I would point out to Mr. Renion that he can file a timely personal restraint

petition, provide evidence of his liabilities, and raise an ineffective assistance of counsel

claim. On this record, I would not remand with directions to the court to conduct a

*Blazina* inquiry a second time.

Siddoway, J.

4