# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON | No.  49944-4-II |
| Respondent, | |
| v. | |
| KAELA MAE GLOVER, | PUBLISHED OPINION |
| Appellant. | |

HAAN, J.[*] — In 2017, following Kaela M. Glover's conviction for second degree burglary, the sentencing court imposed $2,900 in legal financial obligations (LFOs), including $2,100 for court-appointed attorney fees.  Glover appeals, arguing that the sentencing court erred because it failed to adequately inquire into her ability to pay before imposing the discretionary LFO.  Because the sentencing court's inquiry was inadequate under *State v. Blazina*,[1] we reverse the LFOs and remand for a new hearing on LFOs.[2]

---

[*] Judge Marilyn K. Haan is serving as a judge pro tempore of the Court of Appeals pursuant to CAR 21(c).

[1] 182 Wn.2d 827, 344 P.3d 680 (2015).

[2] Glover also argues that the sentencing court erred when it imposed the discretionary attorney fee LFO in an amount partially based on her trial's length and erred when it ordered Glover to pay $25 per month toward her LFOs, despite the fact that she could never pay her LFOs at this amount. Because we reverse and remand for a new hearing on LFOs, we do not reach Glover's remaining issues.  We note that at the time of this opinion, the Supreme Court's opinion in *State v. Ramirez* is pending and that the decision in that case may bear on Glover's resentencing.  *See* Order Granting in Part Petition for Review, noted at 190 Wn.2d 1001 (2018).

FACTS

In 2017, a jury found Glover guilty of one count of second degree burglary, based on testimony that despite being forbidden from entering Walmart property, she had gone to a Walmart store and stolen a bathing suit, ice cube tray, and candy.[3] At sentencing, the trial court determined that Glover's offender score was 15 because of her lengthy criminal history, which included six prior burglaries. Glover received a standard range sentence of 63 months.

Regarding LFOs, the sentencing court inquired whether there was "any physical or other reason why you [Glover] can't work and have a job, earn an income," to which Glover answered, "No." Verbatim Report of Proceedings (VRP) (Jan. 30, 2017) at 242. The sentencing court then asked Glover about any job history, and Glover responded that the last time she had held a job was 30 months before sentencing. Since then she had also worked "[u]nder the table," "like a day or two here and there" at a friend's landscaping company. VRP (Jan. 30, 2017) at 242.

Based solely on this exchange, the sentencing court found that Glover had the future ability to pay LFOs. It ordered Glover to pay $2,900 in LFOs: $2,100 for the discretionary court-appointed attorney fee LFO and $800 for mandatory LFOs.[4] A superior court commissioner later found Glover indigent for purposes of appeal.

Glover appeals the imposition of the discretionary LFO.

---

[3] The probable cause statement lists the stolen property's value as $16.44.

[4] The mandatory LFOs are the $500 victim assessment, $200 criminal filing fee, and $100 deoxyribonucleic acid collection fee. *See State v. Mathers*, 193 Wn. App. 913, 918, 376 P.3d 1163, *review denied*, 186 Wn.2d 1015 (2016); *State v. Gonzales*, 198 Wn. App. 151, 153, 392 P.3d 1158, *review denied*, 188 Wn.2d 1022 (2017).

ANALYSIS

Glover argues that under *Blazina*, the sentencing court failed to adequately inquire into her ability to pay before imposing the discretionary LFO. The State contends that Glover waived this issue or alternatively, that the sentencing court's inquiry was adequate.[5] We reach this issue, agree with Glover, and reverse and remand for a new hearing on LFOs.

I. WAIVER

Glover did not object to the sentencing court's imposition of the discretionary LFO. In general, the failure to raise an issue before a superior court waives the issue on appeal under RAP 2.5(a). *Blazina*, 182 Wn.2d at 832. However, we interpret the rules of appellate procedure liberally "to promote justice and facilitate the decision of cases on the merits." RAP 1.2(a).

In *Blazina*, our Supreme Court held that generally, challenges to discretionary LFOs do not fit within an exception to RAP 2.5(a) and that an appellate court "must make its own decision to accept discretionary review." 182 Wn.2d at 835. Nevertheless, the *Blazina* court exercised its discretion to consider unpreserved LFO arguments in light of the "[n]ational and local cries for reform of broken LFO systems." 182 Wn.2d at 835. In the wake of *Blazina*, appellate courts have heeded its message and regularly exercise their discretion to reach the merits of unpreserved LFO arguments. *See, e.g., State v. Malone*, 193 Wn. App. 762, 765, 376 P.3d 443 (2016).

---

[5] At oral argument, however, the State acknowledged that it is unclear from the record whether Glover was, in fact, able to pay the discretionary LFO due to the lack of inquiry into Glover's financial position and that it is "questionable" whether the sentencing court complied with *Blazina*. Wash. Court of Appeals oral argument, *State v. Glover*, No. 49944-4-II (May 22, 2018), at 25 min., 33 sec. and 30 min., 38 sec (on file with court).

Glover is not automatically entitled to first raise on review her argument that the sentencing court's inquiry into her ability to pay was inadequate. *Blazina*, 182 Wn.2d at 835. Nevertheless, following *Blazina*, we reach the merits of her argument.

## II. LEGAL PRINCIPLES: INQUIRY INTO ABILITY TO PAY

We generally review a decision whether to impose LFOs for an abuse of discretion. *State v. Clark*, 191 Wn. App. 369, 372, 362 P.3d 309 (2015). However, we review legal questions, such as whether a sentencing court's inquiry was adequate under *Blazina*, de novo.[6] *See State v. Garza*, 150 Wn.2d 360, 366, 77 P.3d 347 (2003).

At the time of Glover's sentencing, former RCW 10.01.160(3) (2015) provided that

[t]he court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

In *Blazina*, our Supreme Court set forth specific directives that a trial court must comply with when it imposes discretionary LFOs under former RCW 10.01.160(3):

Practically speaking, this imperative under RCW 10.01.160(3) means that the court must do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry. The record must reflect that the trial

---

[6] We disagree with the concurrence that we should apply an abuse of discretion standard. It is well settled that this court reviews questions of law de novo. *See, e.g.*, *State v. Ford*, 125 Wn.2d 919, 923, 891 P.2d 712 (1995). Even where we would generally review a superior court's decision for an abuse of discretion, we will review de novo a legal determination made as a part of that decision. *See, e.g.*, *State v. Brightman*, 155 Wn.2d 506, 519, 122 P.3d 150 (2005) (stating that the standard of review depends on the trial court's reasoning when it refuses a jury instruction: we review for an abuse of discretion a refusal based on a factual determination, but we review de novo a refusal based on a ruling of law). To apply an abuse of discretion standard in this case would be to defer to the trial court's interpretation of *Blazina*'s holding. But we do not defer to a trial court's discretion when it resolves legal questions, and accordingly "the de novo standard is better applied." *State v. Garza*, 150 Wn.2d 360, 366, 77 P.3d 347 (2003). We note that the appropriate standard of review for this issue is currently before our Supreme Court, in *Ramirez*. *See* Order Granting in Part Petition for Review, noted at 190 Wn.2d 1001 (2018).

court made an individualized inquiry into the defendant's current and future ability to pay. Within this inquiry, the court must also consider important factors, as amici suggest, such as incarceration and a defendant's other debts, including restitution, when determining a defendant's ability to pay.

182 Wn.2d at 838. Among the other factors that the amici in *Blazina* suggested were "employment history, financial situation, and other factors." Amici Curiae Br. of Wash. Defender Ass'n, *Blazina*, No. 89028-5, at 7 (Wash. March 12, 2015).

*Blazina* went on to exhort courts to "look to the comment in court rule GR 34 for guidance," which "lists ways that a person may prove indigent status." 182 Wn.2d at 838. The legislature "intended each judge to conduct a case-by-case analysis and arrive at an LFO order appropriate to the individual defendant's circumstances." *Blazina*, 182 Wn.2d at 834.

### III. INADEQUATE INQUIRY UNDER *BLAZINA*

At sentencing, the court conducted a limited inquiry into Glover's ability to pay: the court asked only about Glover's work history and whether there was any reason she could not work. Glover told the sentencing court that there was no reason she could not work, that the last time she held a job was 30 months before, and that she sporadically worked "[u]nder the table" for a friend's company. VRP (Jan. 30, 2017) at 242. Based solely on this discussion, the sentencing court imposed $2,900 in LFOs, including the $2,100 discretionary LFO for court-appointed attorney fees.

At a minimum, *Blazina* requires a sentencing court to consider within this inquiry important factors bearing on a defendant's ability to pay before imposing discretionary LFOs; these factors include "incarceration and a defendant's other debts, including restitution." 182 Wn.2d at 838. In addition, employment history and financial situation are among the factors suggested by amici, which *Blazina* states the court must consider. Amici Curiae Br., *supra*, at 7.

No. 49944-4-II

Further, a sentencing court should "seriously question" an indigent defendant's ability to pay LFOs. *Blazina*, 182 Wn.2d at 839.

Here, however, the sentencing court was aware that Glover had a lengthy criminal history, including three prior Washington convictions, yet failed to inquire at all about other debts. The court also failed to examine her financial situation, such as the extent of her assets. And Glover was later found to be indigent, calling into question her ability to pay. The record contains no other information to support that the sentencing court engaged in the required consideration of the "important factors" referenced in *Blazina*, beyond the court's minimal questioning about Glover's employment potential. 182 Wn.2d at 838. Yet, despite *Blazina*'s directives, the sentencing court imposed a $2,100 discretionary LFO after minimally questioning Glover about her employment potential.

We hold that the sentencing court's inquiry into Glover's ability to pay was inadequate under *Blazina*. Accordingly, we reverse the LFOs and remand for a new hearing on LFOs.

HAAN, J.P.T.

I concur:

BJORGEN, P.J.

6

I join the majority as to the result. However, I write separately regarding the appropriate standard of review of a sentencing court's inquiry into a defendant's ability to pay discretionary legal financial obligations (LFOs) under *State v. Blazina*.[7] We generally review a court's decision whether to impose discretionary LFOs for an abuse of discretion. *State v. Clark*, 191 Wn. App. 369, 372, 362 P.3d 309 (2015). As stated in *State v. Ramirez*, "Whether or not a trial court makes an individualized inquiry is reviewed de novo; however, if the court does make an inquiry, then we review a trial court's imposition of discretionary LFO's for an abuse of discretion." noted at 1 Wn. App 1001, *6 n.4, (2017), *review granted in part*, 190 Wn.2d 1001. As our Supreme Court has granted review in part of *Ramirez*, the Supreme Court will determine the proper standard of review that applies.

_____
SUTTON, J.

---

[7] 182 Wn.2d 827, 344 P.3d 680 (2015).