IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35805-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| BLAKE ANDREW ZAHN, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Blake Zahn appeals after his conviction for possession of a controlled substance, heroin. We affirm his conviction, but reverse the imposition of his legal financial obligations (LFOs) and remand so the trial court can make appropriate inquiries into Zahn's financial circumstances.

FACTS

On September 25, 2017, Blake Zahn was arrested and booked into the Okanogan County jail. After Zahn was placed into the jail, corrections officers found what they suspected was heroin on him. Zahn received proper *Miranda*[1] warnings and admitted that

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

he brought the item into the jail. The State charged Zahn with possession of a controlled substance other than marijuana.

*Pretrial*

At the scheduled arraignment, defense counsel thought there was a settlement agreement, but Zahn told his counsel that he wished to represent himself. The court questioned Zahn, who said, "I just don't feel that I can fully trust um my attorney and um I would like to represent myself in this matter." Report of Proceedings (RP) (Oct. 9, 2017) at 6. The arraignment was continued one week to consider a settlement offer from the State.

The next week, Zahn told the court that he was saving money to hire an attorney. Because Zahn had not hired an attorney yet, the court granted another one-week continuance.

The following week, Zahn told the court he appointed a "special master" to his case. RP (Oct. 23, 2017) at 16. The court questioned the qualifications of the "special master" because the court had not received a notice of appearance. The court obtained credible information that the purported attorney was not an attorney, and the court advised Zahn that his "special master" could not represent him. Zahn then said, "We can proceed, Your Honor." RP (Oct. 23, 2017) at 20.

2

No. 35805-4-III
*State v. Zahn*


The court informed Zahn of the charge against him, the elements of that charge, and the maximum penalties it carried. Zahn answered that he understood. The court told Zahn he had the right to be represented by a lawyer and, if he could not afford one, a lawyer could be appointed at public expense, and informed him of his other constitutional rights. The court then engaged in the following colloquy:

> THE COURT: Mr. Zahn, one of the purposes today here is to make sure that you have adequate representation. You have the right to represent yourself, as well as you have the right to have the Court appoint an attorney for you. My question today is the fact as to whether you're going to represent yourself. The individual you have proposed is not authorized to practice law in this Court and in the State of Washington. . . .
> So, I need to be clear here today. Is it your intent to go forward and represent yourself or are you asking the Court to appoint an attorney that's authorized to practice in the State of Washington.
> MR. ZAHN: It's my intent—
> THE COURT: To represent you?
> MR. ZAHN: To go forward and represent myself, Your Honor.

RP (Oct. 23, 2017) at 23-24.

Zahn assured the court he had represented himself before, he was familiar with the Rules of Evidence and the Rules of Criminal Procedure, and he had utilized those in prior proceedings. Zahn reiterated that he was the only person he trusted.

The trial court advised Zahn against his choice:

3

[You would be] better off being defended or represented by a trained lawyer rather than by yourself. I think generally those that represent themselves make an unwise decision. . . . I would strongly urge you to not represent yourself, to have counsel assist you and represent you. There's a lot of dangers and disadvantages in self-representation, but if you still desire to represent yourself and to give up that right to be represented by a lawyer, I need to know, are you doing that freely and voluntarily?

RP (Oct. 23, 2017) at 25-26. Zahn answered that he was. The trial court found that Zahn had knowingly, voluntarily, and intelligently waived his right to an attorney.

At the first omnibus hearing, Zahn failed to file his omnibus application. The trial court offered to appoint stand-by counsel. Zahn denied the offer. Zahn later was arrested on a bench warrant for failure to appear in court. Zahn still had not filed an omnibus application. The court stressed to Zahn its concern about him representing himself. Zahn reaffirmed his decision to represent himself and refused the court's offer to appoint counsel.

*Trial*

In its opening argument to the jury, the State outlined the testimony of its five witnesses. This included a summary of Sergeant Kevin Arnold's testimony:

He asked the defendant, well, basically did you . . . bring [the substance] into the jail or did you get it from somebody else in the jail and the defendant answered that he brought it into the jail.

4

> The defendant declined to say really anything further about the event.  Sergeant Arnold took the suspected drugs and these were packaged up and they were sent to the crime laboratory . . . .

RP (Jan. 3, 2018) at 126-27.

The State's witnesses presented overwhelming evidence of Zahn's guilt.  Deputy Gordon Mitchell testified he arrested Zahn, drove him to the jail, and later reviewed his patrol video that showed Zahn may have hidden something on his person.  Deputy Mitchell reported this to the jail.

Corrections officers testified they took Zahn to the medical room for a strip search.  Before the strip search, Zahn handed over a pair of folded socks from his pants.  A corrections officer felt an object inside the socks.  The other officer unrolled the socks and saw a package that appeared to contain drugs.  The officers notified dispatch.

Dispatch contacted Sergeant Arnold.  Sergeant Arnold testified he went to the jail and learned that corrections staff had found possible narcotics on Zahn.  He examined what the corrections officers had found—a black, tar-like substance that was wrapped in a sock.  Sergeant Arnold then questioned Zahn and asked whether he had brought the substance into the jail or whether he had obtained it from someone else inside the jail.  He testified that Zahn admitted he brought the substance into the jail.  Sergeant Arnold added, "[A]nd that at that point he didn't want to talk to me anymore."  RP (Jan. 3, 2018)

at 143. Sergeant Arnold photographed and weighed the substance and sent it to the crime laboratory.

Dr. Jason Stenzel, a forensic technician, testified that he performed two tests using verified scientific methods on the substance. Both tests concluded that the substance contained heroin.

The State rested. Zahn did not present any evidence. Both parties gave the jury their closing arguments.

Before excusing the jury to begin deliberations, the court addressed the parties:

Counsel, we have drugs here and typically they don't go back in the jury room with the jurors . . . .
. . . .
THE COURT: There is a photograph, but typically the evidence that's in the bags, the actual drugs, normally don't go back.
. . . .
THE COURT: . . . I just want to make you aware, we do not [sic] contraband back to the jury room . . . . Obviously, that type of thing, which is not—could be harmful substances and such in those bags and things and that's why they just don't go back.

RP (Jan. 3, 2018) at 224-25.

The jury returned a guilty verdict. The following day, the court sentenced Zahn to 3 months' imprisonment, 12 months' community custody, and imposed mandatory LFOs totaling $2,210.50.

Before imposing those obligations, the court inquired about Zahn's employment over the past three years. Zahn said he was currently working and expected to be working after he was released from jail. The court found that Zahn had the ability to pay.

Zahn timely appealed to this court.

ANALYSIS

Zahn assigns four errors: (1) the trial court unconstitutionally forced him to proceed pro se, (2) the State, twice, impermissibly commented on his constitutional right to remain silent, (3) the trial court commented on the evidence that relieved the State of its burden to prove all of the elements beyond a reasonable doubt, and (4) the trial court engaged in an inadequate inquiry and all LFOs should be struck.

ZAHN'S PRO SE REPRESENTATION

Zahn contends the trial court erred by forcing him to proceed pro se and by conducting an inadequate inquiry. We disagree.

A trial court's decision on a defendant's request to proceed pro se is reviewed for an abuse of discretion. *State v. Curry*, 191 Wn.2d 475, 483, 423 P.3d 179 (2018). "An abuse of discretion occurs only when the decision of the court is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *State v.*

*McCormick*, 166 Wn.2d 689, 706, 213 P.3d 32 (2009) (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

Criminal defendants have a constitutional right to self-representation. WASH. CONST. art. I, § 22; *Curry*, 191 Wn.2d at 482. This right is in tension with a criminal defendant's right to the assistance of counsel. *Curry*, 191 Wn.2d at 482; *State v. DeWeese*, 117 Wn.2d 369, 376, 816 P.2d 1 (1991). To harmonize this tension, a defendant must unequivocally request to proceed pro se and the "'trial court must establish that a defendant, in choosing to proceed pro se, makes a knowing and intelligent waiver of the right to counsel.'" *Curry*, 191 Wn.2d at 483 (quoting *DeWeese*, 117 Wn.2d at 377).

If the request is untimely or equivocal, the court must deny the request. *Id.* "The threshold issues of timeliness and equivocality focus on the nature of the request itself— if, when, and how the defendant made a request for self-representation—not on the motivation or purpose behind the request." *Id.* at 486-87. The court should examine the facts and circumstances of the case and the request, including how the request was made, the language used in the request, and the context surrounding the request. *Id.* at 488.

Here, Zahn's request was timely and unequivocal. At his first scheduled arraignment, Zahn told his counsel he wished to represent himself. The arraignment was

8

continued twice, after which time the court advised Zahn of his constitutional rights, including his right to appointed counsel and to represent himself. After being so advised, Zahn made a clear and unequivocal choice to represent himself. After further questioning from the trial court, Zahn responded that he was making his choice freely and voluntarily. Still later in the process, after the trial court offered to appoint counsel for Zahn, Zahn reiterated his desire to represent himself.

We conclude that the trial court did not abuse its discretion by allowing Zahn to proceed pro se. Zahn's request was timely, unequivocal, he later re-asserted it, and the trial court ensured that Zahn's waiver was knowing, intelligent, and voluntary.

STATE'S COMMENTS ON ZAHN'S RIGHT TO SILENCE

Zahn contends the State unconstitutionally commented on his right to remain silent. We conclude that the comment, which occurred after Zahn handed over the drugs and admitted he brought them into jail, was harmless beyond a reasonable doubt.

The Fifth Amendment to the United States Constitution guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." Otherwise known as the right to silence, this right has been made applicable to Washington through the Fourteenth Amendment. *State v. Easter*, 130 Wn.2d 228, 235, 922 P.2d 1285 (1996); *see also* WASH. CONST. art. I, § 9. Specifically, in the postarrest

9

context, the State cannot comment on a defendant's right to remain silent. *State v. Romero*, 113 Wn. App. 779, 787, 54 P.3d 1255 (2002); *see also Doyle v. Ohio*, 426 U.S. 610, 619, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976). "Warnings under *Miranda* given upon arrest 'constitute an "implicit assurance" to the defendant that silence in the face of the State's accusations carries no penalty,' making it fundamentally unfair to then penalize the defendant by offering his silence as evidence of guilt." *State v. Terry*, 181 Wn. App. 880, 889, 328 P.3d 932 (2014) (quoting *Easter*, 130 Wn.2d at 236).

Because both statements by the State were unobjected to by Zahn, we must first determine whether the statements were "comments" or "references" relating to Zahn's silence. *Id*. at 890. "[B]oth are improper, but only the former rise[s] to the level of constitutional error, and that what are merely improper references are not reviewable for the first time on appeal." *Id.* (internal quotation marks omitted). The focus is to examine the purpose of the remarks. *Id.* at 891.

Beginning with "comments," a further inquiry is necessary: as established in *Romero*, courts should use a two-part analytical test to determine whether the comments were direct or indirect. *Romero*, 113 Wn. App. at 790-91. This framework is still used by the courts. *See State v. Whitaker*, 6 Wn. App. 2d 1, 429 P.3d 512 (2018); *Terry*, 181 Wn. App. 880. If the comment was direct, constitutional error exists and the court must

apply a constitutional harmless error beyond a reasonable doubt analysis. *Romero*, 113 Wn. App. at 790. "A direct comment occurs when a witness or state agent makes reference to the defendant's invocation of his or her right to remain silent." *State v. Pottorff*, 138 Wn. App. 343, 346, 156 P.3d 955 (2007) (finding officer's testimony, "'He said at that time he wanted to invoke his right to remain silent'" constituted a direct comment); *see also Whitaker*, 6 Wn. App. 2d at 39-40 (finding officer's testimony that he read the defendant his *Miranda* rights, but the defendant did not speak with him, constituted a direct comment); *Romero*, 113 Wn. App. at 793 (finding officer's testimony, "'I read him his *Miranda* warnings, which he chose not to waive, would not talk to me'" constituted a direct comment); *State v. Curtis*, 110 Wn. App. 6, 9, 13, 37 P.3d 1274 (2002) (finding officer's testimony, "'I read him his *Miranda*, his constitutional rights. . . . He refused to speak with me at the time, and wanted an attorney present'" constituted a direct comment).

Here, the State's opening comment and a portion of Sergeant Arnold's testimony amounted to a direct comment on Zahn's constitutional right to silence similar to *Pottorff*, *Romero*, and *Curtis*. During the State's opening and in the sergeant's testimony, the jury learned that Zahn admitted he brought the drugs into the jail, but chose not to say

11

anything further. Although these are impermissible direct comments on Zahn's right to silence, we are convinced they were harmless beyond a reasonable doubt.

Before exercising his right to silence, Zahn handed over the suspected drugs and admitted he had brought them into the jail. The evidence was undisputed that the suspected drugs tested positive as heroin. With such an impregnable case and facing an unrepresented defendant, one wonders why the State sought to jeopardize its case by infusing improper evidence into it. But our role is not to question the State's choices, but to determine whether the improper evidence was harmless beyond a reasonable doubt. Here, the evidence of guilt was overwhelming and undisputable.

JUDICIAL COMMENTS ON THE EVIDENCE

Zahn contends the trial court made an improper comment on the evidence when it advised the parties, in the jury's presence, that the substances in question were actually drugs. Zahn argues that this improper comment relieved the State of its burden to prove this element. We accept the State's concession that the court's comment was improper. But we determine that Zahn was not prejudiced by it.

Zahn did not object to the court's statements; however, a judicial comment on the evidence is an error of constitutional magnitude that can be raised for the first time on appeal. *State v. Sivins*, 138 Wn. App. 52, 59, 155 P.3d 982 (2007); RAP 2.5. Article IV,

12

section 16 of the Washington Constitution states that "[j]udges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." In other words, judges are prohibited from commenting on the evidence. WASH. CONST. art. IV, § 16; *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006). "[A]ny remark that has the potential effect of suggesting that the jury need not consider an element of an offense could qualify as judicial comment." *Levy*, 156 Wn.2d at 721. "It is sufficient if a judge's personal feelings about a case are merely implied." *Sivins*, 138 Wn. App. at 58. This important constitutional provision serves to protect the jury from being unduly influenced by the court's opinion on the evidence. *Id.*

Washington courts use a two-step analysis to determine whether reversal is required due to a judicial comment on the evidence. *Levy*, 156 Wn.2d at 723. First, to determine whether a court's conduct or remarks rise to a comment on the evidence, courts examine the facts and circumstances of the case. *Sivins*, 138 Wn. App. at 58. If there was a judicial comment, it is "presumed to be prejudicial, and the burden is on the State to show that the defendant was not prejudiced, unless the record affirmatively shows that no prejudice could have resulted." *Levy*, 156 Wn.2d at 723.

13

Here, the court's remarks did amount to a comment on the evidence. In front of the jury, the court had a discussion with the parties about not sending the exhibits back with the jury because they were "drugs," "actual drugs," "contraband," and "harmful substances." These remarks had the likely effect of suggesting to the jury that they need not consider whether the State proved Zahn possessed heroin because the trial court clearly believed the exhibits were drugs. Nonetheless, "there is 'overwhelming untainted evidence' to support the conviction." *Sivins*, 138 Wn. App. at 61.

The record overwhelmingly establishes Zahn's guilt. Zahn voluntarily handed over suspected drugs to the corrections officers and then admitted to Sergeant Arnold that he had brought them into the jail. Dr. Stenzel testified that he tested the substance using two different verified scientific methods and both methods returned that the substance contained heroin. Compared with this strong evidence, Zahn's cross-examination was limited and largely ineffective, he called no witnesses, and his closing argument was for jury nullification.

Furthermore, any potential error was cured by the jury instructions. *State v. Eisner*, 95 Wn.2d 458, 463, 626 P.2d 10 (1981). The court instructed the jury to disregard any judicial comments on the evidence. Jurors are presumed to follow the instructions of the court. *State v. Stein*, 144 Wn.2d 236, 247, 27 P.3d 184 (2001).

14

No. 35805-4-III
*State v. Zahn*

Although the trial court's comments were improper, we find that they were harmless beyond a reasonable doubt. *State v. Lane*, 125 Wn.2d 825, 840, 889 P.2d 929 (1995); *Sivins*, 138 Wn. App. at 61.

LFOs

Zahn contends all discretionary LFOs should be struck because he was indigent at the time of sentencing. Alternatively, he contends the trial court conducted an inadequate inquiry into his present and future ability to pay, and that remand is necessary to determine whether discretionary LFOs should be imposed. He further contends that the criminal filing fee and the DNA collection fee must be struck.

Zahn's arguments are based on recent statutory changes, applicable to cases pending direct review on or after the effective date of the legislation, June 7, 2018. *See State v. Ramirez*, 191 Wn.2d 732, 738, 747, 426 P.3d 714 (2018).

Recently amended RCW 10.01.160(3) prohibits trial courts from imposing discretionary LFOs on defendants who, at the time of sentencing, are indigent as defined

15

in RCW 10.101.010(3)(a) through (c).[2]  In addition, for defendants who are *not* indigent

at the time of sentencing, the court "shall take account of the financial resources

of the defendant and the nature of the burden that payment of costs will impose."

RCW 10.01.160(3).

Additional recent amendments include RCW 36.18.020(2)(h) and RCW 43.43.754.

The former prohibits imposition of the criminal filing fee on indigent defendants.  The

latter prohibits imposition of the DNA collection fee when the State has previously

collected the offender's DNA as a result of a prior conviction.

The record does not permit us to determine whether Zahn, at the time of

sentencing, was or was not indigent within the definition of RCW 10.101.010(3).  Even

assuming Zahn was *not* indigent at that time, there was no inquiry into Zahn's financial

resources and the nature of the burden that payment of LFOs would impose.  The record

---

[2] (3) "Indigent" means a person who, at any stage of a court
proceeding, is:
(a)  Receiving one of the following types of public assistance:
Temporary assistance for needy families, aged, blind, or disabled assistance
benefits, medical care services under RCW 74.09.035, pregnant women
assistance benefits, poverty-related veterans' benefits, food stamps or food
stamp benefits transferred electronically, refugee resettlement benefits,
medicaid, or supplemental security income; or
(b)  Involuntarily committed to a public mental health facility; or
(c)  Receiving an annual income, after taxes, of one hundred twenty-
five percent or less of the current federally established poverty level . . . .

also is insufficient for us to determine whether Zahn had his DNA previously collected as a result of a prior conviction.

We reverse the imposition of LFOs and remand this matter so the trial court can make the following determinations with respect to LFOs:  First, the trial court must determine if Zahn was "indigent," as defined by RCW 10.101.010(3) at the time of his original sentencing.  If he was, we direct the trial court to strike all discretionary LFOs in accordance with RCW 10.01.160(3) and the criminal filing fee in accordance with RCW 36.18.020(2)(h).

Second, if the trial court determines that Zahn was *not* indigent, the trial court must conduct an adequate *Blazina*[3] inquiry to determine to what extent imposition of discretionary LFOs are appropriate.  At a minimum, the court must consider the length of Zahn's incarceration, his other debts, including restitution, his employment history, his financial situation, and his ability to pay.  *Blazina*, 182 Wn.2d at 838-39; *State v. Glover*, 4 Wn. App. 2d 690, 695-96, 423 P.3d 290 (2018).

Third, the trial court must consider whether to impose the $100 DNA collection fee.  If the State believes that Zahn has not had his DNA collected—despite his multiple

---

[3] *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015).

No. 35805-4-III
*State v. Zahn*

prior felony convictions—it must present evidence at resentencing to substantiate its belief.

Affirmed, but reverse LFOs and remand to ensure only proper LFOs are imposed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Siddoway, J.

Fearing, J.

18