# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52463-5-II |
| Respondent, | |
| v. | |
| HUVALDO BLANCAS, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Huvaldo Blancas is a self-employed landscaper with four dependent children. Blancas lived with his parents, who gave him permission to rebuild a shed in their backyard. Late one night, while drinking alcohol, Blancas decided to begin tearing down the roof of the old shed. After Blancas's brother called law enforcement, police responded and arrested Blancas for malicious mischief. While seated in the back of a patrol vehicle, Blancas became agitated and spit at the plexiglass divider between the front and back seats. Several droplets of saliva hit the officer sitting in the driver's seat in the face.

A jury convicted Blancas of third degree assault for spitting on the officer. At sentencing, the trial court noted Blancas was not indigent because he worked when he was not in prison. The trial court imposed legal financial obligations (LFOs) and ordered that they would bear interest from the date of the judgment.

Blancas appeals, arguing that the trial court failed to conduct an adequate inquiry into his ability to pay, improperly imposed LFOs because he is indigent, and erroneously ordered the accrual of interest. The State concedes this matter should be remanded for reevaluation of LFOs.

In a statement of additional grounds for review (SAG), Blancas also argues that responding officers applied excessive force and the trial court violated the appearance of fairness doctrine at sentencing. We hold that Blancas's SAG issues lack merit, but we agree that the trial court erred by ordering the accrual of interest and by failing to adequately inquire into Blancas's ability to pay. Accordingly, we affirm Blancas's conviction but remand to the trial court to strike the interest accrual provision and to reassess whether to impose LFOs after fully considering any alleged bases for Blancas's indigency and his ability to pay.

## FACTS

Blancas lived with his parents and worked in landscape construction. He had permission from his parents to rebuild a shed in their backyard. Late one night, Blancas began to tear the roof off the old shed while drinking alcohol. Blancas's brother called law enforcement and reported Blancas for destroying their parents' shed. Because of Blancas's criminal history, about 15 officers responded to Blancas's parents' house. The officers found Blancas on the roof of the shed, asked him to get down, and arrested him for malicious mischief. Vancouver Sheriff's Deputy Jayson Camp placed Blancas in Camp's patrol vehicle and left him there for about 20 minutes while he returned to the house to continue his investigation.

Camp's patrol vehicle was outfitted with a metal and plexiglass partition between the front and back seats. The partition included a sliding portion that could be opened or closed, in part, to facilitate air flow. When Camp placed Blancas in the back of his patrol vehicle, the sliding portion of the partition was open. As Camp sat in the front seat of the vehicle to compile his probable cause affidavit, Blancas became agitated and began to yell and curse at Camp. Camp heard a spitting sound and felt wet droplets on the side of his face from his temple to his jawline. Camp

placed Blancas in a spit mask and hobbled Blancas's feet. Blancas continued to swear at and threaten Camp.

A jury found Blancas guilty of third degree assault. Given Blancas's lengthy criminal history, the standard range sentence was 51 to 60 months. The trial court sentenced Blancas to an exceptional downward sentence of 36 months. The trial court noted that a standard range sentence would be excessive given the facts of the case. The trial court concluded that a 36 month sentence was consistent with the purposes of the Sentencing Reform Act of 1981, chapter 9.94A RCW, and proportionate to the crime.

The trial court briefly addressed Blancas's indigent status: "[Y]ou're not indigent. You do work when you're out and about, so I'll waive some of the fines and fees and costs consistent with you being locked up for the next three years." Verbatim Report of Proceedings (Sept. 26, 2018) at 307. The trial court checked a box on the judgment and sentence form indicating that it had considered the total amount owing, Blancas's past, present, and future ability to pay, the nature of the burden financial obligations would impose, and the likelihood that his circumstances would change. But the trial court did not discuss these factors on the record or ask Blancas any questions related to these factors.

The trial court found that Blancas was not indigent as defined in RCW 10.101.010(3)(a)-(c), and, although he did not have the ability to pay at the time, the trial court anticipated he would be able to pay in the future. The trial court imposed LFOs including a $500 crime victim assessment, a $200 criminal filing fee, and a $250 jury demand fee. The judgment and sentence stated that the LFOs would bear interest from the date of the judgment until payment in full.

52463-5-II

Blancas filed a motion and declaration for an order authorizing him to seek appellate review at public expense and with appointed appellate counsel. In his declaration, Blancas stated he was a self-employed landscaper with four dependent children and his wages were garnished for child support. Blancas was also subject to debts with the Department of Corrections. The trial court entered an order of indigency authorizing Blancas to pursue his appeal at public expense and with appointed counsel.

Blancas appeals.

ANALYSIS

I. LEGAL FINANCIAL OBLIGATIONS

Blancas argues that the trial court erred by ordering the accrual of interest on nonrestitution LFOs and by imposing the criminal filing fee and the jury demand fee because he was indigent. Blancas also argues that the trial court failed to conduct an adequate inquiry into his financial status.[1] The State concedes that ordering interest was improper and the trial court failed to conduct an adequate individualized inquiry into Blancas's ability to pay discretionary LFOs. We accept the State's concession and remand to the trial court to strike the nonrestitution interest provision and to reassess whether to impose LFOs after an individualized inquiry into Blancas's indigency and ability to pay.

In 2018, the legislature amended former RCW 36.18.020(2)(h) (2017) and former RCW 10.46.190 (2005) to prohibit trial courts from imposing the criminal filing fee and jury demand fee on defendants who are indigent as defined in RCW 10.101.010(3)(a)-(c). LAWS OF 2018, ch. 269,

---

[1] Blancas does not challenge the imposition of the crime victim assessment, which is not subject to an indigency inquiry. RCW 7.68.035.

§§ 9, 17. Under RCW 10.101.010(3)(a)-(c), a person is "indigent" if he or she receives certain types of public assistance, is involuntarily committed to a public mental health facility, or receives an annual after tax income of 125 percent or less of the current federally established poverty level. The legislature also amended former RCW 10.82.090(1) (2005) to provide that no interest shall accrue on nonrestitution LFOs. LAWS OF 2018, ch. 269, § 1.

Blancas argues that the trial court's imposition of the jury demand fee and filing fee was improper because he is indigent, and he asks this court to remand with instructions to the trial court to strike these LFOs. Blancas contends that he is indigent because he qualified for court-appointed counsel both at trial and on appeal, he lives with his parents, and his wages are garnished for child support and by the Department of Corrections for prior LFOs. But this is insufficient to show that Blancas is indigent under the specific subsections that apply to prohibit the imposition of the otherwise mandatory criminal filing fee. RCW 10.101.010(3)(a)-(c).

The record does not contain any information as to whether Blancas meets the criteria for indigency under RCW 10.101.010(3)(a)-(c). Blancas's declaration supporting his motion for appellate review at public expense and with appointed counsel notes that he is a self-employed landscaper with four dependent children. His wages are garnished for child support and he is subject to debts to the Department of Corrections. But the declaration does not state what his annual after tax income is or whether he receives public assistance. Accordingly, the record is insufficient for this court to determine whether the LFOs must be stricken.

Our inquiry does not end there. A trial court must conduct an individualized inquiry on the record concerning a defendant's current and future ability to pay discretionary LFOs, such as the jury demand fee. *State v. Ramirez*, 191 Wn.2d 732, 742, 426 P.3d 714 (2018); *State v. Blazina*,

182 Wn.2d 827, 838-39, 344 P.3d 680 (2015); *State v. Lundy*, 176 Wn. App. 96, 107, 308 P.3d 755 (2013). Factors the trial court must consider include (1) incarceration, (2) other debts including other court costs and restitution, (3) income, (4) assets and other financial resources, (5) monthly living expenses, (6) employment history, (7) health care costs, and (8) the ways of proving indigency under the comment to GR 34. *Ramirez*, 191 Wn.2d at 742-44. Boilerplate language in a form is not enough. *See Blazina,* 182 Wn.2d at 838.

Here, the trial court's inquiry into Blancas's financial circumstances was minimal. The transcript shows that the court inquired only into Blancas's ability to work when he is not in prison. The State concedes that this inquiry was inadequate for the jury demand fee, which is a discretionary cost. *See State v. Glover*, 4 Wn. App. 2d, 690, 695-96, 423 P.3d 290 (2018) (trial court's inquiry, which was limited to employability, was inadequate). We accept the State's concession.

The trial court also imposed interest on the nonrestitution LFOs from the date of judgment. But because RCW 10.82.090(1) prohibits interest on nonrestitution LFOs, the interest provision in the judgment and sentence must be stricken.

Accordingly, we hold that this matter must be remanded for a new LFO hearing because the trial court's inquiry into Blancas's ability to pay cannot support imposing the jury demand fee, and the trial court erred by imposing interest on nonrestitution LFOs. Further, if the trial court on remand finds that Blancas is indigent as defined in RCW 10.101.010(3)(a)-(c), the court cannot impose any discretionary LFOs and must also strike the criminal filing fee, a nondiscretionary LFO. RCW 10.01.160(3); RCW 36.18.020((2)(h).

## II. STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

A.      Excessive Police Force

Blancas argues that the arresting officers used excessive force during his arrest. But the record does not support his claim. Police violate the Fourth Amendment to the United States Constitution if they use excessive force during an arrest. *Staats v. Brown*, 139 Wn.2d 757, 774, 991 P.2d 615 (2000). We analyze claims of excessive force during an arrest under the Fourth Amendment's "'objective reasonableness'" standard. *Id.* (quoting *Graham v, Connor*, 490 U.S. 386, 388, 109 S. Ct. 1865, 104 L. Ed. 2d. 443 (1989)). Although about 15 officers responded to the scene after Blancas's brother's report due to Blancas's criminal history, the record reflects Blancas was compliant, and the officers did not apply excessive force during his arrest. When the officers instructed him to get down from the roof of the shed, he complied and was detained on the sidewalk. Blancas did not testify to any unusual or unnecessary force when describing the process of his arrest. Nothing in the record supports Blancas's claim of excessive police force on appeal.

B.      Probable Cause

Blancas also argues that the officers had insufficient probable cause to arrest him.[2] He emphasizes that he had permission from his parents to be at the residence and to work on the shed. But these facts do not negate the arresting officers' probable cause. "Probable cause exists where

---

[2] Blancas also alleges that he was "kidnapped by the police force before the assault occurred in [Camp's] patrol vehicle." SAG at 1. Blancas was under arrest at the time he was placed in Camp's patrol vehicle. This assertion of error is too vague to allow us to identify the issue Blancas raises and we do not address it further. RAP 10.10(c).

the facts and circumstances are within the officer's knowledge and the facts and circumstances are such that the officer has reasonably trustworthy information sufficient to warrant a person of reasonable caution to believe that an offense has been committed." *State v. Racus*, 7 Wn. App. 2d 287, 301, 433 P.3d 830, *review denied*, 193 Wn.2d 1014, 441 P.3d 828 (2019).

The declaration of probable cause stated that the officers responded to a call that Blancas was destroying property with a pipe. When the officers arrived, they found Blancas on the top of the shed. Consistent with Blancas's brother's report, portions of the roof of the shed were caved-in and showed fresh damage. Accordingly, the facts and circumstances within Camp's knowledge were sufficient to warrant the suspicion of criminal activity, and Blancas's claim fails.

C.     *Miranda* Warnings

Blancas also appears to argue that his rights were violated because the arresting officers did not read him his *Miranda*[3] rights. But Blancas does not identify the nature and occurrence of the alleged error as required by RAP 10.10(c). To the extent Blancas challenges the admission of his statements to Camp prior to and following the assault, we note that the trial court held a CrR 3.5 hearing and, after reviewing the record, we have identified no error in the trial court's ruling that Blancas's statements were admissible.

D.     Conflict of Interest at Sentencing

Blancas argues that the trial court showed a conflict of interest at sentencing because the judge appeared reluctant to send Blancas to prison for the offense, but nonetheless sentenced him to an exceptional downward sentence of 36 months. We disagree.

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The appearance of fairness doctrine demands the absence of actual or apparent bias on the part of the trial court. *State v. Solis-Diaz*, 187 Wn.2d 535, 540, 387 P.3d 703 (2017). To support his claim, Blancas must present evidence of actual or potential bias. *Id.* Blancas fails to carry that burden.

Blancas points to no evidence supporting his contention that the trial court was biased or had a conflict of interest at his sentencing hearing. Rather, the record shows that the trial court carefully considered the facts of Blancas's conviction, the standard sentencing range under Blancas's offender score, each party's sentencing recommendation, and the proportionality of the sentence. Nothing in the record suggests that the trial court was actually or apparently biased. Accordingly, Blancas's claim fails.

## CONCLUSION

Blancas's SAG issues lack merit, and we affirm his conviction. But we accept the State's concession that the trial court must reevaluate imposition of the LFOs. We affirm Blancas's conviction and remand for the trial court to strike the interest accrual provision and to reassess whether to impose the criminal filing fee and jury demand fee after fully considering any alleged bases for Blancas's indigency and his ability to pay.

52463-5-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Maxa, P.J.

Sutton, J.